# CHICAGO, BURLINGTON, AND KANSAS CITY RAILROAD *v.* GUFFEY.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Argued January 3, 1887. — Decided March 7, 1887.

The provision in the state constitution of Missouri of 1865, that "no property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to this state, to counties, or to municipal corporations within the state" applies to stock issued for constructing branches of the St. Joseph and Iowa Railroad in that state under the provisions of the statute of March 21, 1868, "to aid in the building of branch railroads in the state of Missouri"; and the provision in the charter of that railroad company, enacted in 1857, that its stock should be exempt from taxation for state and county purposes, does not apply to the stock issued for branches constructed under the act of 1868.

Immunity from taxation by the state will not be recognized, unless granted in terms too plain to be mistaken.

THIS action was instituted in conformity with a local statute of Missouri, to recover certain state and county taxes alleged to be due upon the property of the plaintiff in error, situate in Putnam County in that state. The Federal question is stated in the opinion of the court.

*Mr. Jeff. Chandler* for plaintiff in error. *Mr. L. T. Hatfield* and *Mr. A. W. Mullins* were with him on the brief.

*Mr. John P. Butler* for defendant in error. *Mr. B. G. Boone*, Attorney General of Missouri, and *Mr. S. P. Huston* filed a brief for same.

MR. JUSTICE HARLAN delivered the opinion of the court.

The judgment which this writ of error brings up for review affirms the liability to taxation, in Missouri, for state and county purposes, of what was formerly known as the Central North Missouri Branch of the St. Joseph and Iowa Railroad, more recently named the Linneus Branch of the Burlington and Southwestern Railway Company, and now owned by the Chicago, Burlington, and Kansas City Railroad Company, a corporation organized under the laws of Missouri. The latter company claims to have succeeded to all the rights, privileges, and immunities granted to the St. Joseph and Iowa Railroad Company in its charter of 1857, among which was an exemption of its stock from taxation for "state and county" purposes. As the construction which the Supreme Court of Missouri places upon certain legislation, enacted after the charter of the St. Joseph and Iowa Railroad Company was granted, is inconsistent with the exemption claimed, the controlling question, on this writ of error, is whether the local statutes, as interpreted and applied by that court, impair the obligation of any contract which the company had with the state and thereby deprive its successor, the plaintiff in error, of any rights secured by the Constitution of the United States.

That question mainly depends upon the construction of an act of the General Assembly of Missouri, entitled "An act to aid in the building of branch railroads in the state of Missouri," approved March 21, 1868.

That act took effect from its passage, and is as follows:

" Section 1. Any railroad company in this state authorized by law to build branches, and wishing to avail themselves of the provisions of this act, shall, by its board of directors, pass, and cause to be entered upon its records, a resolution setting forth such desire, and designating the name under which such branch shall be built, its point of intersection with its main line and general course, a certified copy of which resolution shall be filed with the secretary of state, after which they shall be governed by the provisions of this act.

" Sec. 2. Whenever any such railroad company shall undertake the construction of a branch designated, as provided in the first section of this act, they shall receive donations or subscriptions to stock to aid its construction in the name of such branch, which shall be expressed in the certificate of stock issued; the cost and expenses of constructing and operating such branch shall be kept separate and distinct from expenses on the main line. They may borrow money and issue bonds secured by mortgage on such branch road to aid in its construction, and, in general, may operate, lease, sell, or consolidate with any connecting road, distinct and separate from their main line, and in any other way, may manage or dispose of such branch, as by law they may be authorized with reference to their main line, and separate therefrom.

" Sec. 3. Any branch road so constructed shall not be holden for any debt, lien, or liability of the main line, nor shall the main line be holden for any debt, lien, or liability of such branch. Any dividends of profits arising out of the business of such branch road shall be divided among the stockholders in said branch, and in all respects the interest of the stockholders in the branch shall be kept separate and distinct from the interests of the stockholders in the main line

" Sec. 4. The holders of stock in any railroad company which was subscribed in aid of the construction of a branch road, according to the provisions of this act, shall have the same rights as other stockholders in the company in the choice of officers; but, in all matters directly and specially affecting the interests of such branch road, the stockholders in such branch

shall control, and, for such purpose, the directors, under their by-laws, may, or on the petition of parties representing one-tenth of such stock shall, call a meeting of the stockholders in such branch, setting forth the object of such meeting; and at any such meeting such stockholders may instruct the board of directors in all matters relating especially to their interests, and they shall be governed by such instructions, if not inconsistent with the laws of the state and the powers of such company." Laws Missouri, 1868, p. 90.

The branch road in question was constructed under the provisions of that statute. That fact distinctly appears from the preamble and resolutions adopted by the board of directors of the St. Joseph and Iowa Railroad Company, March 25, 1871 ( a certified copy thereof being filed April 19, 1871, in the office of the secretary of state of Missouri,) and expressly stating the purpose of the company to avail itself of the provisions of the act of 1868 in building this branch road.

The statute, it will be observed, does not exempt from taxation stock subscribed in aid of the construction of the branch roads for which it makes provision. But as it applies to railroad companies, " authorized by law to build branches," and as the St. Joseph and Iowa Railroad Company was authorized by its charter of 1857 to build such branch roads as it deemed proper, *State ex. rel., &c., v. County Court of Sullivan County,* 51 Missouri, 522, 531, it is contended that the exemption, by the company's original charter, of its stock from taxation for state and county purposes, extends to stock subscribed in the name and exclusively for the benefit of the branch road constructed under the act of 1868.

When that statute was passed, the constitution of Missouri of 1865 declared that " no property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to this state, to counties, or to municipal corporations within this state." Art. 12, § 16.

As, perhaps, every railroad company, organized under the laws of the state prior to the adoption of the constitution of 1865, had general authority to construct branch roads, it is

clear that the construction of the act of 1868, for which the appellant contends, cannot be accepted, except upon the theory that the legislature intended to evade the constitutional inhibition upon exemptions of property from taxation; for it is plain, from the provisions of the act of 1868, that the roads which it authorized to be built, although called branch roads, are, for all purposes of separate ownership and management, independent lines, quite as distinct from the main lines as if constructed and operated by other and different corporations. Such provisions as are to be found in that statute are rarely ever found in legislative enactments. An analysis of them shows that any "branch" road constructed under it must be designated by the name under which it is built; donations and subscriptions in aid of it must be received in that name; the cost of construction and management must be kept separate and distinct from expenses incurred on the main line; money may be borrowed and bonds issued secured by mortgage on the branch only; the branch road may be sold, operated, leased, or consolidated with any connecting road of another corporation, or disposed of separately from the main line; it is liable only for its own debts, and not for those of the main line; profits arising out of the business of such branch road can be divided only among its stockholders, and their interests are to be kept distinct from those of the stockholders of the main line; and the board of directors of the company owning the main line are required in all matters relating especially to the interests of the stockholders of the branch road, to follow all instructions given by the latter, without regard to their effect upon the main line. In other words, the stockholders of a branch road constructed under the act of 1868 constitute, in effect, a separate organization, having no connection whatever with the stockholders of the main line, except that the main line and the branch road are, for purposes of convenience, managed by the same board of directors. It may be conceded, for all the purposes of this case, that if the St. Joseph and Iowa Railroad Company, or the company which succeeded to its rights, privileges, and immunities, had built a branch road under the charter of 1857, it could, in respect to that branch, have

stood upon the exemption contained in its charter. Any stock issued by it, and sold to aid in the construction of such a branch road, would, in that case, have been on the same footing in all respects as other stock it may have issued; and its main and branch lines would have been parts of the same system, controlled by the board of directors as they deemed proper. But the company elected not to adopt that course, for the reason, perhaps, that it could not, in that mode, have raised the money necessary to build a branch road. In the condition in which all the railroads of Missouri were left by the civil war, it would have been difficult to raise money to build branch roads, if their future was to be endangered by connection with main lines which needed repairs, and the corporations owning which were without credit. It was, doubtless, for that reason, the St. Joseph and Iowa Railroad Company, instead of constructing a branch road, under the charter of 1857, determined to avail itself of the provisions of the statute of 1868, which permitted it to construct and maintain what is called a branch road, but what, in fact, would be a road having only nominal connection with the main line of the company.

The branch roads to which the charter of the St. Joseph and Iowa Railroad Company referred were, in our judgment, such as would be subject to the same control and management as its main line, and not roads that were branch roads only in name, but were distinct lines, operated solely with reference to the interests and pursuant to the directions of those holding stock therein, irrespective of the necessities of the main line.

To avoid the conclusion that there was a purpose to devise a plan whereby railroad property should be exempt from taxation, which the constitution of 1865 intended should be taxed, we must assume that the legislature intended to invite railroad corporations having general power under their charters to construct branch roads, to waive the exercise of such power, and construct roads under the provisions of the act of 1868 which, although not granting an immunity from taxation, yet afforded peculiar protection to those whose money might be used in such construction.

To say the least, it is not clear that the legislature intended

that the exemption from taxation, given by such charters as that granted to the St. Joseph and Iowa Railroad Company, should be extended to branch roads constructed under the act of 1868. As that statute does not grant immunity from taxation to roads constructed under its provisions, and as the system established by it is complete in itself without reference to other legislative enactments, the present claim to exemption must be denied; for it is the settled doctrine of this court that an immunity from taxation by the state will not be recognized unless granted in terms too plain to be mistaken. *Providence Bank* v. *Billings,* 4 Pet. 514 ; *Philadelphia, Wilmington & Baltimore Railroad* v. *Maryland,* 10 How. 376 ; *Memphis & Little Rock Railroad* v. *Commissioners,* 112 U. S. 609, 617; *Southwestern Railroad* v. *Wright,* 116 U. S. 231, 236 ; *Vicksburg, &c., Railroad* v. *Dennis,* 116 U. S. 665, 667.

As our conclusion upon this point accords with that of the state court, and is sufficient to dispose of the whole case, we omit any consideration of other questions presented in argument.

*Judgment affirmed.*