CASE 80—ACTION BY J. D. TYLER'S ADMR., &C. AGAINST W. A. BOGARD
AND WM. PARKS, ON A TIMBER CONTRACT.—MARCH 10, 1900.

(Omitted in former reports.)

# Bogard v. Tyler's Admr. &c.

# McBride v. Same.

APPEAL FROM TRIGG CIRCUIT COURT—THOMAS P. COOK, CIRCUIT JUDGE.

FROM A JUDGMENT SUSTAINING ATTACHMENTS DEFENDANT BOGARD AP-
PEALS. REVERSED.

MORTGAGES—PLEDGES—LIENS ON MANUFACTURING ESTABLISHMENT.

B. made an agreement with P., who was engaged in operating
a portable saw-mill, by which he agreed to advance $8.00 on
every one thousand feet of oak and poplar lumber cut and de-
livered at a certain place, the advances to continue until three
hundred thousand feet of the lumber was delivered. A written
instrument to this effect was executed and recorded as a mort-
gage when only about $300 worth of the lumber had come into
the possession of P. After advancements had been made on
the lumber to the extent contemplated, an attachment was
levied upon the lumber, and under an agreement B. was au-
thorized to sell the lumber. Parties claiming to have furnished
standing timber and labor in the manufacture of said lumber,
asserted their lien claims under section 2487, Kentucky Stat-
utes, claiming that the saw-mill was a manufacturing estab-
lishment, and its assets had come to be distributed among its
creditors. HELD, that the contract which had been recorded
was not a mortgage, and the property was only in pledge for
advancements as it was delivered at the place specified. Nor
were the claims of parties having furnished material and labor
enforcible as liens under said statute, as the property or ef-
fects of said manufacturing establishment had not come to be
distributed among its creditors, as provided in said statute.

FENTON SIMS, FOR APPELLANT, BOGARD.

ROBERT CRENSHAW, FOR McBRIDE.

R. A. BURNETT, FOR APPELLEES, TYLER AND FUQUA, ADMRS.

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

It appears that William Parks, who was engaged in operating a portable saw-mill, on July 17, 1893, entered into a contract with W. A. Bogard, as follows: "This contract and agreement this day made and entered into, by and between W. A. Bogard and Wm. Parks, all of Trigg county, Ky., witnesseth: That the said ' W. A. Bogard hereby agrees to furnish and advance to the said Wm. Parks $8.00 on every thousand feet of oak and poplar board lumber, 12, 14 and 16 feet long, of first, second and common class, delivered on the bank of the Cumberland river. For any advancement made under this contract the said W. A. Bogard is hereby given a lien on said lumber to secure the payment of said advancement, with 6 per cent. interest thereon until paid. Should any of said lumber be shipped to market for sale it is to be shipped for apc. of the sd. W. A. Bogard. The amount of lumber upon which advancement is to be made under this contract is not to exceed three hundred thousand feet. July 17, 1893."

Under this contract a large quantity of lumber, approximating 300,000 feet, was, from time to time, cut and delivered on the banks of the Cumberland river, and it is claimed a large sum of money was advanced to Parks by Bogard. The lumber was being loaded on barges for transportation to market, under the supervision of Bogard, at the time Fuqua and Tyler brought attachment suits, the attachments in which were levied upon this lumber. Soon after a number of persons who had performed labor in the saw mill, and others who had sold standing timber to Parks, brought suit, claiming liens under section 2487, Kentucky Statutes, as having been employes of Parks in the business, and as having furnished materials for the carrying on of the business, it being claimed that the saw mill was a manufacturing estab-

lishment within the meaning of the section, and that, practically, the property of the owner of the establishment had come to be distributed among the creditors by operation of law.   The lien claimed was also sought to be justified by reason of an agreement between Bogard, Parks and the attaching creditors, whereby Bogard was permitted to take the lumber to market and dispose of it to the best advantage he could, the proceeds to stand in lieu of the lumber.   The various suits were consolidated, the issues made up, and on final hearing the trial court adjudged that the contract, which had been put to record, was a mortgage, and as only some $300 worth of lumber was in existence on the river bank at the time of its execution, the rest being standing timber, it was void as to all except that which was then in being and in the possession of the mortgagor.   We think this was an erroneous view of the contract.   The fact that it was put to record did not make it a mortgage.   In our view it was simply a contract for the delivery to Bogard upon the bank, of the sawed lumber, upon which it was agreed he should have a lien for the advances made by him, shipments to market to be made in his name.   The contract provided, therefore, not for a mortgage, but for a pledge.   No lien attached under it until delivery, actual or constructive, to him upon the bank of the river.   When this was done his lien accrued under the contract, and he had the right to retain possession of the pledged property until its sale, either by consent of the pledgor or after proper proceedings, accounting to the pledgor for the surplus over the advances made by him.

Numerous questions are made as to the proper construction of the act of February 25, 1893, relied on as giving a lien in favor of the employes and material men.   These questions, however, in our view, need not be considered, except the

question whether the statute applies in this case. The lien being statutory, all the conditions upon which it is predicated must exist. There must be a manufacturing establishment, and under the evidence in this case, as the saw mill was engaged in manufacturing lumber for the market, we think there was. The property or effects of the owner or operator of the manufacturing establishment must, first, be assigned for the benefit of the creditors; or, second, come into the hands of any executor, administrator, commissioner, receiver of a court, trustee or assignee for the benefit of creditors; or, third, in anywise come to be distributed among creditors, whether by operation of law or by the act of such owner or operator. Confessedly there was no assignment for the benefit of creditors, and we do not think the second alternative exists. Bogard, under an out-of-court agreement that he might sell the property and account for the proceeds, was in no sense a receiver of the court. Nor do we think the third alternative exists, for the statute in speaking of property coming to be distributed among creditors by operation of law would seem to refer to the case of such conveyances as are by law made to operate as assignments for the benefit of creditors. We do not mean to decide here that no other case can come within the language of the Statute, but merely that the case presented does not.

It is obvious that the view which the trial court took of the law prevented any consideration of the issues of fact presented by the pleadings, and upon which much testimony was taken. When the case goes back, therefore, it will be proper for the trial court to decide the issues of fact presented by the pleadings, and enter judgment upon its findings in accordance with the law as now laid down.

The judgment is reversed and cause remanded, with di-

rections to set aside the judgment and for further proceedings consistent herewith.

Petition for rehearing by appellee overruled.