## American Tobacco Company v. City of Bowling Green, et al.

(Decided September 27, 1918.)

### Appeal from Warren Circuit Court.

1. Taxation.—Manufacturing Machinery—Exemption.—Chapter 11, of the Acts of the Legislature, Special Session 1917, exempting from city taxation machinery and products in course of manufacture of persons, firms or corporations actually engaged in manufacturing, and their raw material actually on hand at their plants for the purpose of manufacture, contemplates manufacturing at the place of taxation; and the exemption will not be allowed in the city where the raw material, consisting of tobacco, is collected, assorted and cured preparatory to shipping it to other cities for the purpose of there manufacturing chewing, smoking and other kinds of tobacco.

2. Taxation—Manufacturing Machinery.—Where a corporation engaged in the manufacture of plug, chewing and smoking tobacco, cigarettes, and fine cut tobacco, with its chief factories in other cities and states, owned a tobacco warehouse in Bowling Green in which it cured tobacco bought from the farmers, by assorting, classifying, hanging it on sticks, redrying and stemming a portion of it, preparatory to shipping it to its various manufacturing plants in other cities and states, the business so conducted was not a manufacturing establishment within the meaning of chapter 11 of the Acts of the Legislature, Special Session 1917, exempting from city taxation machinery and products in course of manufacture of corporations actually engaged in manufacturing, and their raw material actually on hand at their plants for the purpose of manufacture.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY, J. JOS. HETTINGER and SIMS, RODES & SIMS for plaintiff.

WM. T. BASKETT, BEN D. RINGO, O. P. ROPER, T. W. THOMAS and GUY H. HERDMAN for defendants.

OPINION OF THE COURT BY JUDGE MILLER—Overruling motion for an injunction.

The American Tobacco Company instituted this action against the city of Bowling Green, its tax collector and its assessor, seeking to enjoin them from collecting taxes for city purposes for the year 1918 on the raw material, consisting of leaf tobacco, belonging to the plaintiff, and actually on hand at its plant in Bowling Green, Kentucky, and to cancel the assessment and tax bill.

The company claims that its tobacco is not subject to taxation for city purposes under section 4 of chapter 11

of the Acts of the Legislature, Special Session 1917, which reads as follows:

"4.  All property subject to taxation for state purposes, as provided in section 4020, Kentucky Statutes, shall be subject also to taxation in the county, city, school or other taxing district, in which same has a taxable situs, except the following classes of property, which shall be subject to taxation for state purposes only.

"(1)  Farm implements and farm machinery owned by a person actually engaged in farming and used in his farm operations.

"(2)  Machinery and products in course of manufacture of persons, firms or corporations, actually engaged in manufacturing, and their raw material actually on hand at their plants for the purpose of manufacture." Acts 1917, Special Session, p. 44.

The plaintiff contended below, and repeats the contention here, that as it is a corporation actually engaged in the manufacture of plug tobacco, chewing tobacco, smoking tobacco, cigarettes, fine cut and possibly other forms of tobacco, its raw material actually on hand at its plant in Bowling Green for the purpose of manufacturing tobacco is exempt under the statute above quoted. The chancellor was of opinion that the manufacturing referred to in the exempting statute meant manufacturing at the place of taxation; and that as the plaintiff did not manufacture tobacco at Bowling Green its tobacco located in that city was subject to taxation. Consequently, the chancellor denied the motion for an injunction, whereupon the plaintiff applied to a judge of the Court of Appeals for an injunction similar to that which was denied it below; and since the case presents an important question of taxation, it has been considered by the whole court, except Judge Hurt, who was absent.

The proof shows the plaintiff to be a manufacturer of plug tobacco, chewing and smoking tobacco, cigarettes, fine-cut, and possibly other kinds of tobacco, having its principal factories for that purpose at Durham, N. C.; Reidsville, N. C.; Richmond, Va.; Baltimore, Md.; Jersey City, N. J.; Milwaukee, Wis., and Louisville, Ky. It manufactures more than a hundred different brands of tobacco, including "Tuxedo" smoking tobacco, at its Louisville factory. It maintains a tobacco warehouse at Bowling Green, Ky., under the control of a local manager,

who buys tobacco in the local markets and receives it at the Bowling Green warehouse, where it is redried and rehandled, or "cured," as it is called, as a preliminary preparation for its ultimate use in manufacturing the different kinds of manufactured tobacco above specified. At the Bowling Green warehouse the tobacco is assorted, or classified, hung on sticks, redried, bulked and about twenty-five per cent of it is stemmed. It is then put in hogsheads and shipped to the plaintiff's various manufacturing plants, according to their respective requirements as to quality and quantity. But plaintiff has no machinery in its warehouse in Bowling Green, and no manufacturing is done there, unless the curing of the tobacco preparatory to its shipment to the company's factories at other points be treated as an initial step in, and a part of, the process of manufacturing.

Unquestionably the plaintiff is actually engaged in manufacturing tobacco at Durham, N. C., and the other places above mentioned, where its principal factories are located. But does that fact bring them within the exempting provisions of the statute above quoted, which exempts "machinery and products in course of manufacture of . . . corporations actually engaged in manufacturing, and their raw material actually on hand at their plants for the purpose of manufacture?" Clearly the first clause of the second sub-section of the statute above quoted has no application here, since the plaintiff has no machinery or products in course of manufacture at its warehouse in Bowling Green. It has raw material on hand at that plant; but we do not think its plant at Bowling Green can properly be termed a manufacturing plant.

Plaintiff insists, however, that the work done at the Bowling Green warehouse is the initial step in the process of manufacturing the various kinds of tobacco, and that it is therefore exempt, although the intermediate and final acts in the process of manufacturing and turning out the finished product are performed in places other than Bowling Green.

It is somewhat difficult to formulate a satisfactory definition as to what constitutes manufacturing, from the decisions of the courts, or to say when it begins. In Words and Phrases, Vol. 5, p. 4348, it is said:

"The primary meaning of the word 'manufacturing' is something made by hand as distinguished from a natu-

ral growth; but as machinery has largely supplanted this primitive method, the word is now ordinarily used to denote an article upon the material of which labor has been expended to make the finished product. Ordinarily, the article so manufactured takes a different form, or at least subserves a different purpose from the original materials and usually it is given a different name. Raw materials may be, and often are, subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. Thus logs are first manufactured into boards, planks, joists, scantlings, etc., and then by entirely different processes are finished into boxes, furniture, doors, windows, sashes, trimmings and a thousand and one articles manufactured wholly or in part of wood. The steel spring of a watch is made ultimately from iron ore, but by a large number of processes or transformations, each successive step in which is a distinct process of manufacture and in which the article so manufactured receives a different name.'' Citing Tidewater Oil Company v. U. S., 171 U. S. 210, and State v. American Sugar Refining Company, 51 La. Ann. 562.

The generic meaning of the term ''manufacture,'' is ''made by hand,'' but in the development of business manufacturing has come largely to mean a process of making things by machinery. But there is no hard and fast rule which can be applied generally; each case must be decided under its own facts and with a view of carrying out the intention of the legislature by giving a reasonable interpretation to the statute involved. Thus, in In Re Troy Steam Laundering Company, 132 Fed., 266, where the laundering company was engaged chiefly in taking collars and cuffs from the companies that manufactured them and putting the final polish on the collars and cuffs before they were sold as a part of the completed garment, it was held that the laundering company was engaged in manufacturing. But where a steam laundering company receives the soiled collars and cuffs from a customer for the purpose of washing and ironing them, can it be said that it is then engaged in manufacturing? Clearly not, although the two processes are substantially identical. Muir v. Samuels, 23 Ky. L. R. 14, 62 S. W. 481.

In Bogard v. Tyler's Admr., 21 Ky. L. R. 1452, 55 S. W. 709, it was held that a saw mill at which lumber was

sawed for sale on the market was a manufacturing establishment within the meaning of the statute giving employes a preferred claim for wages. And, in W. H. Hall & Son v. J. F. Guthrie's Sons, 103 S. W. 721, it was held that a flour mill was a manufacturing establishment within the meaning of the same statute, because it turned wheat into flour.

In State v. American Sugar Refining Company, 108 La., 603, it was held that a sugar refiner was a manufacturer, the court there approving the following definitions given in other cases:

"A manufacturer is not one who creates out of nothing, for that would surpass human power. Neither is he one who produces a new article out of materials entirely raw. He is one who gives new shapes, new qualities, new combinations, to matter which has already gone through some artificial process. City v. LeBlanc, 34 La. Ann. 597."

"A manufacturer is defined to be one who is engaged in the business of working raw materials into wares suitable for use, who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. City v. Ernst, 35 La. Ann. 746.

"The word manufacture means the making of anything by hand or artifice. Railroad Co. v. Fulghaus, 91 Ala. 555."

These and many similar cases have been cited by plaintiff for the purpose of showing that the "curing" of its tobacco in its Bowling Green plant is the initial step in, and a part of, the process of manufacture. If that be true, it might well be argued that the plaintiff's raw material is exempt from taxation under the letter of the statute of 1917. But, in construing statutes their words and phrases are to be construed and understood according to the common and approved usage of language. Ky. Sts. sec. 460. Moreover, exemption provisions must be strictly construed, and no one will be exempted from bearing his share of the public burdens unless the exemption be clearly given. Applying these rules to the case before us, we are of opinion that the phrase "actually engaged in manufacturing," and "actually on hand at their plants for the purpose of manufacture," mean manufacturing at the place of taxation, and not at some other place.

The evident purpose of the legislature in providing this exemption was to encourage the location of manufacturing establishments in the various cities and towns of the Commonwealth, and as an inducement to that end the legislature deemed it proper and advisable to exempt from local taxation "machinery of persons, firms or corporations actually engaged in manufacturing," and also "products in course of manufacture," and "raw material actually on hand at their plants for the purpose of manufacture." The word "machinery" thus used evidently refers to machinery employed in the business of manufacturing and located at the place of taxation; and "products in course of manufacture," would likewise refer to material actually undergoing the process of manufacture, which, as we have seen, is simply a change from the original material to a new and different article. It thus appears that the term "machinery" and the phrase "products in course of manufacture" must be understood as applying to machinery and products at the local plants—machinery actually employed in manufacturing products which are in the course of manufacture. And, in the ordinary course of manufacturing, there is the further important item of "raw material actually on hand for the purpose of manufacture." But there would appear to be no sound reason in exempting "products in the course of manufacture" from local taxation, and at the same time impose a tax upon raw material on hand for the purpose of manufacture, since both are placed upon the same basis; and, as we have above seen, the manufacturing referred to means manufacturing at the place of location.

This conclusion is supported by a consideration of other provisions of the statute. Thus, it will be observed that the statute deals also with farming implements and farm machinery, and places such implements and machinery in the class of property which shall not be taxed for local purposes, when "owned by a person actually engaged in farming and used in his farm operations." It would hardly be contended that farming implements or farm machinery owned by a resident of Bowling Green and used in farming operations in a different county should be relieved from the burden of local taxation.

So the case is reduced to this proposition: Is the handling of plaintiff's tobacco in Bowling Green in the

way and manner heretofore indicated a part of its process of manufacturing plug, smoking tobacco, fine cut, &c., within the meaning of the statute? When we consider that the tobacco is there merely gathered together by buying it from the farmer, either directly or through a loose leaf warehouse; that it is then rehandled, assorted and classified, by ordinary hand labor, preparatory to its shipment to plaintiff's various manufacturing plants situated in other cities, its texture and quality remaining the same and unchanged as when bought; and that it is subjected to no treatment or process which can be said to change the character of the tobacco from its original state to a new and different article, it would seem that a reasonable interpretation of the statute would require us to say that nothing was manufactured at the Bowling Green plant. As was said by the chancellor, if this tobacco properly comes within the exemption provision, then tobacco which may be purchased directly from the farmer for the ultimate purpose of manufacture into chewing and smoking tobacco, would also be exempt, if the farmer, in preparing it for shipment, under direction of the purchasing agent, should undertake to classify it by separating the leaf from the lugs and trash; and that if the acts of plaintiff in this case in its Bowling Green plant could be called manufacturing, then the illustrative case just cited must be dignified by the same term. We conclude, therefore, that the statute contemplates manufacturing at the place of taxation in order to exempt the raw material from local taxation, and that plaintiff's Bowling Green plant is not a manufacturing establishment within the meaning of the statute. The motion for an injunction is overruled. The whole court, except Judge Hurt, sitting.