Myers, J.
 

 The question is whether operations of The Schumacher Stone Company, appellee, in crushing and screening limestone into various merchantable sizes, are to be deemed manufacturing. If manufacturing, then the personal property thus used and owned shoul^be assessed, under Sections 5385, 5386 and 5388, General Code, at only fifty per cent, but if used otherwise in business then at Seventy per cent of the true value thereof.
 

 The Tax Commission of Ohio denied to the stone company the status of a manufacturer in respeet to the personal property used in such operations. On appeal,
 
 *530
 
 the Court of Common Pleas reversed the order of the Tax Commission. The Court of Appeals affirmed the judgment of the Court of Common Pleas. The cause is' in this court fon review by reason of allowance of a motion of the Tax Commission to have the record certified.
 

 One claim made by the Tax Commission is that the Court of Common Pleas had no jurisdiction to consider and determine the appeal from its order for the reason that the order did not relate either to the liability or valuation of the property of The Schumacher Stone Company but was an order relating solely to the classification of the property for taxation purposes. We are not in accord with such view. This court held in
 
 Standard Oil Co.
 
 v.
 
 Zangerle, Aud.,
 
 133 Ohio St., 33, 11 N. E. (2d), 242, that an appeal to the Court of Common Pleas was a proper remedy where the Tax Commission sought to assess certain personal property as real estate. The court stated that, under the Intangible Tax Act, classification became a prerequisite to valuation and was a step or incident in the determination of the true value of the property in question. The authority to decide whether certain property is personal or real estate is not unlike the power to decide whether personal property is owned and used in manufacturing or otherwise. It is the final order of the commission that is here challenged.
 
 Ohio Valley Water Co.
 
 v.
 
 Ben Avon Borough,
 
 253 U. S., 287, 64 L. Ed., 908, 40 S. Ct., 527. The Court of Common Pleas had jurisdiction.
 

 Are the operations of appellee’s mill in crushing and screening limestone a manufacturing process ? A part of Section 5385, General Code, reads as follows: “A person who purchases, receives or holds personal property, of any description, for the purpose of adding to the value thereof by manufacturing, refining, rectifying, or by the combination of different materials with a view of making a gain or profit by so doing, is a manufacturer * * It is agreed that appellee
 
 *531
 
 crushes and screens stone with a view of making a gain or profit by so doing. No claim is made that the process involved is either refining or rectifying. The company claims that its crushing and screening operations are a manufacturing process while the Tax Commission contends that no articles are manufactured.
 

 Counsel for the Tax Commission place considerable stress on the fact that prior to the enactment, in 1931, of the law providing for classification of personal property, the company had never made a tax return as a manufacturer although it had been in the same business for many years. This fact is not controlling for the reason that prior to the enactment of that law, it made no particular difference as to classification of the personal property here in question. Moreover, if a mistake had been previously made in making a return, appellee should not be prevented now from having the personal property taxed according to its true status. Eeference is also made to the purpose for which The Schumacher Stone Company was incorporated. Counsel for the Tax Commission state in their brief: “There is no suggestion in the evidence in this case, or otherwise, that this company, so far as its articles of incorporation or other stated purposes are concerned, was organized for the purpose of ‘manufacturing’ anything.” While such fact might be material under certain circumstances, it is not determinative in the instant case.
 
 Commonwealth
 
 v.
 
 McCrady-Rodgers Co.,
 
 316 Pa., 155, 174 A., 395.
 

 The Tax Commission of Ohio is invested by statute with authority in respect to certain questions of taxation. It is peculiarly adapted to review such" questions. The provision that personal property used in manufacturing should be assessed at only fifty per cent of the true value thereof instead of seventy per cent is in the nature of an exemption and he who claims such exemption has the burden to show by clear and convincing evidence that the Tax Commission was
 
 *532
 
 in error.
 
 Commonwealth
 
 v.
 
 McCrady-Rodgers, supra.
 
 See also
 
 Chicago, Burlington & Kansas City Ry. Co.
 
 v.
 
 Guffey,
 
 120 U. S., 569, 30 L. Ed., 732, 7 S. Ct., 693;
 
 Vicksburg, Shreveport & Pac. Rd. Co.
 
 v.
 
 Demis,
 
 116 U. S., 665, 667, 29 L. Ed., 770, 6 S; Ct., 625. Otherwise an appeal to the courts would merely provide a substitution of the court’s opinion for that of the commission.
 

 We have the question whether the machinery and equipment used by the company in crushing and screening stone was personal property used in manufacturing. Personal property used by appellee in quarrying the stone is not here involved.
 

 The operations of the plaintiff may be briefly described as follows: The company owns a large quarry from which stone is blasted, after which the resulting material is taken by means of cars up an incline to the mill and the first preliminary crushers. Stone going through the first crusher in the mill varies “from little fine stuff to pieces that are two inches thick and some eight inches square and probably larger,” as the record shows. After leaving the first crusher the resulting product goes through a vibrating screen which separates the larger pieces for the purpose of passing same into a number 3 crusher. After passing through crusher number 3, the stone is small enough to pass-through a 2%-inch square mesh screen. In brief, the process of crushing and screening is continued until a variety of marketable products are produced each having a special designation according to the use for which it is best adapted. Different grades of stone are numbered according to size for purpose of sale. Standard sizes of stone produced by the appellee comprise numbers 2, 3, 4, 6, 7, 9, 34, 46 and M.22.
 

 The larger part of the stone sold from the plant consists' of sizes numbered 46, 4, 6 and 7. Number 46 is used for ordinary gravel roads. Number 4 is used for tarring roads and macadam for state highways. Num
 
 *533
 
 bers 6 and 7 are used for patching roads. Numbers 4, 6 and 7 may be mixed so as to make number 46. Some of the finer products are sold as agricultural limestone for soil improvement, some for concrete and building purposes and some for poultry or stock feed. Whatever the product, designation or use, however, it is all stone and sold as a stone product. No skill or labor of any kind is applied to make the particles of stone conform to any particular shape or design. The particles produced are not unlike particles of stone crushed by hammers and hand labor except that by improved machinery the crushing is done much more rapidly and the resulting product more efficiently screened into various sizes.
 

 The use of stone for road construction is neither new nor modern. The ancients used stone for such purposes and evidence of stone roadways built in England by the Legions of Caesar may still be observed. Limestone has likewise been one of the most common materials for building roadways in this country. In early days most of the work was performed by manual labor with hammers and other simple tools. With the advent of the motor vehicle and the necessity for hard surfaced highways, the crushing and screening of stone by machinery was greatly accelerated. The simple method of removing and crushing stone from, quarries by manual labor was superseded by steam shovels, inclined tramways, crushers and vibrating screens, such as are used by the appellee in the instant, case.
 

 Originally no one would have claimed that the process of crushing and screening of stone for road purposes was manufacturing. It is now claimed, however, that, since by modern machinery, in a series of operations, the rough stone as it comes from the quarry may be crushed and screened into 14 different sizes, each designed and sold for a specific purpose as is done by appellee, the process may be properly described as manufacturing.
 

 
 *534
 
 The word “manufacture” is defined by Webster as follows: “(2) to work, as raw or partly wrought materials, into suitable forms for use; as, to manufacture wool, iron, etc. (3) To fabricate; to invent; also, to produce mechanically.” The definition of “manufacture” given by Standard Dictionary is “to make or fashion by working on or combining material; form or produce by some industrial process; fashion by hand or machinery; especially when done in considerable quantities and as a regular business; * * *.” In holding the process of turning green coffee into a finished product to be manufacturing, it was stated in
 
 City of Louisville
 
 v.
 
 Zinmeister & Sons,
 
 188 Ky., 570, 222 S. W., 958, 10 A. L. R., 1269, that: “Whether a refining process applied tó a given article is ‘manufacture’ within the-meaning of the statutes, Section 4019a-10, depends upon the particular facts of the case. Courts have experienced much difficulty in determining what is a manufacturing establishment and what is included in the term ‘manufacture.’ There is no hard and fast rule by which to determine whether a given establishment is a ‘manufactory,’ but all the facts and circumstances must be taken into consideration in determining whether the establishment is or is not to be so reckoned. Whether it is such an establishment does hot depend upon the size of the plant, the number of men employed, the nature of the business or the article to be manufactured, but upon all these together and upon the result accomplished.” The same court held that gathering tobacco into a warehouse and then grading, stemming and redrying it with engines and other machinery was not manufacturing. P.
 
 Lorillard Co.
 
 v.
 
 Ross, Sheriff,
 
 183 Ky., 217, 209 S. W., 39. But in another case that court ruled that a plant where tobacco was made into plugs, twist, cigars, etc., was a manufacturing establishment. To the same effect, see
 
 American Tobacco Co.
 
 v.
 
 City of Bowling Green,
 
 181 Ky., 416, 205 S. W., 570. In
 
 Commonwealth
 
 v.
 
 Sun
 
 
 *535
 

 beam Water Co.,
 
 284 Pa., 180, 130 A., 405, it was held that producing distilled water by subjecting water to heat, converting it into steam and reeondensing it into water was not manufacturing.
 

 Cutting agate and tiger-eye stones into parts and into shapes of penholder handles and other articles was decided to be 'manufacturing in
 
 Erhardt
 
 v.
 
 Hahn,
 
 55 F., 273. Likewise the making of ice cream by a large plant and extensive machinery.
 
 Hughes & Co.
 
 v.
 
 City of Lexington,
 
 211 Ky., 596, 277 S. W., 981.
 

 In the case of
 
 Engle
 
 v.
 
 Sohn & Co.,
 
 41 Ohio St., 691, 52 Am. Rep., 103, this court held that:
 
 “A
 
 person who purchases and slaughters hogs, for the'purpose of adding to the value thereof by certain processes and combination with other materials — whereby they are converted into' bacon, lard and cured meats, — with a view of making a gain or profit thereby, is a manufacturer and taxable, as such * * *.” That ease is readily distinguishable from the instant case for the reason that additional labor and skill were applied by which the meat was converted into other products — bacon, lard and cured meats. Reference has been made to the case of
 
 Hadfield-Penfield Steel Co.
 
 v.
 
 Shelter,
 
 108 Ohio St., 106, 141 N. E., 89. However, that case was not primarily concerned with the question of taxation but with an action for damages for personal injuries sustained while the person was engaged in operating an “abrasive” wheel in a factory where iron and steel products were made.
 

 The mere subjection of articles, such as corks, to a cleansing and coating process to adapt them to -a special use does not amount to manufacture.
 
 Anheuser-Busch Brewing Assn.
 
 v.
 
 United States,
 
 207 U. S., 556, 52 L. Ed., 336, 28 S. Ct., 204.
 
 A
 
 laundry is not a manufacturing establishment.
 
 Muir
 
 v.
 
 Samuels,
 
 110 Ky., 605, 62 S. W.,
 
 481; Franklin-American Laundry & Dry Cleaning Co.
 
 v.
 
 Tax Commission,
 
 126 Ohio St., 472, 186 N. E., 370. In
 
 Hartranft
 
 v.
 
 Wiegmann,
 
 121
 
 *536
 
 U. S., 609, 30 L. Ed., 1012, 7 S. Ct., 1240, shells cleaned by acid, and all intended to be sold for ornaments, as shells, were held not to be manufactured.
 

 A sawmill, which converts logs into lumber, was ruled to be a manufacturing establishment, in
 
 Bogart
 
 v.
 
 Tyler’s Admr.,
 
 119 Ky., 637, 55 S. W., 709. So also was a flouring mill.
 
 Hall & Son
 
 v.
 
 Guthrie’s Sons,
 
 31 Ky. L. Rep., 801, 103 S. W., 721. “A corporation which is principally engaged in building concrete arches and bridges and dressing stone is a manufacturing corporation #
 
 In re First National Bank of Bellefourche,
 
 152 F., 64. Making barrels is manufacturing.
 
 City of New Orleans
 
 v.
 
 LeBlanc,
 
 34 La., 596. Making coke from coal has been held to constitute manufacturing.
 
 Commonwealth
 
 v. Juniata
 
 Coke Co.,
 
 157 Pa., 507, 29 A., 373, 22 L. R. A., 232.
 

 Referring now to cases concerned with the crushing and screening of limestone, we find the weight of authority to be that such operations are not regarded as a manufacturing process, although in a few jurisdictions it is held otherwise. In the case of
 
 Graff
 
 v.
 
 Minnesota Flint Rock Co.,
 
 147 Minn., 58, 179 N. W., 562, the court defined a manufacturer to be one who by labor, art or skill transforms raw material into some kind of finished product or article of trade. In the opinion, on page 60, we find the following: “Operating a stone quarry-is not manufacturing within the rule, except when coupled with the additional work of shaping the blasted material into form for use as building material, street curbing or other finished product.! ’ In the case of
 
 Commonwealth
 
 v.
 
 Welsh Mountain Mining & Kaolin Mfg. Co.,
 
 265 Pa., 380, 108 A., 722, it was held that a corporation, engaged in crushing and grinding rock into sand of specified grades of fineness which was sometimes colored by the admixture of clay, was not engaged in manufacturing.
 

 In the following cases operations similar to those of appellee were held not to be manufacturing:
 
 Welling
 
 
 *537
 

 ton
 
 v.
 
 Inhabitants of Belmont,
 
 164 Mass., 142, 41 N. E., 62;
 
 People, ex rel. Thompson’s Cove Stone Co., v. Saxe,
 
 176 App. Div., 1, 162 N. Y. S., 408 (see page 411);
 
 Inhabitants of Leeds
 
 v.
 
 Maine Crushed Rock & Gravel Co.,
 
 127 Me., 51, 141 A., 73;
 
 Iowa Limestone Co.
 
 v.
 
 Cook,
 
 211 Ia., 534, 233 N. W., 682. In the Iowa case it was stipulated that “The processes performed in the plant consist of blasting of limestone from a natural deposit and the crushing and screening of the limestone to merchantable sizes. The limestone is loaded into cars, trucks, and wagons from the plant and shipped direct to purchasers.”
 

 One of the leading cases on the subject is
 
 Commonwealth
 
 v.
 
 John T. Dyer Quarry Co.,
 
 250 Pa., 589, 95 A., 797, where the operations were similar to those in the instant case but on a much larger scale, there being 18 crushers with a capacity of 4500 tons per day. In ruling that the operations carried on were not manufacturing, the Supreme Court of Pennsylvania adopted the opinion of the trial court, from which we quote: “If the breaking of the stones into these sizes was performed as it could be by the manual labor of men wielding hammers and breaking the stone into the required sizes, it could scarcely be pretended that this is manufacturing. The machinery employed doubtless crushes • the stone much more rapidly and economically than it could be done by men wielding hammers, and the sorting of the sizes is accomplished by running the' crushed stone over screens with different sized mesh and per-x mitting the stone of the varying sizes to fall into the underlying bins. There does not seem to be any attempt to make the sizes of the stone into which the rock is crushed of any uniform shape. The pieces' as they fall from the crusher are sold in the market without the application thereto of any art, skill, or process which in any way changes the appearance or the form of the portions as they leave the crusher. The
 
 *538
 
 processes of this defendant seem to he entirely different from those of a slate company, which splits the slate rock into pieces and produces therefrom shingles, slates, polished slabs for wainscoting and other purposes, and slate fashioned for various uses' to which slate is adapted. The irregular pieces as they fall from the crusher are sold in that condition without any attempt on the part of the defendant company to remove the rough, irregular edges or in any way fashion these portions so as to give them a uniform appearance. The employment of the process and the use of the machinery is solely for the purpose of breaking the stone into pieces of various sizes. The rock still remains rock or stone. The only difference is in the sizes .of the portions, and in this natural condition without the application of any art or process to change the form or appearance of the broken pieces' the same are sold by the defendant company in the market.”
 

 The operations of appellee in crushing and screening-limestone are not unlike the processes cited in the foregoing cases. In reaching the conclusion that the personal property in question was not used in manufacturing, the Tax Commission had ample reason and authority. We are in accord with its action. The order of the Tax Commission should have been sustained and therefore the judgment of the Court of Appeals, which affirmed the judgment of the Court of Common Pleas, is reversed. .
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Zimmerman and Williams, JJ., concur.
 

 Day, J., dissents.
 

 Dixon, J., not participating.