PRODUCERS SERVICE CORPORATION, Appellant,

v.

LIMBACH, Tax Commr., Appellee.

[Cite as *Producers Serv. Corp. v. Limbach* (1992), 80 Ohio App.3d 613.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–616, 92AP–617.

Decided Dec. 22, 1992.

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson* and *Tony C. Merry,* for appellant.

*Lee I. Fisher,* Attorney General, and *Richard C. Farrin,* Assistant Attorney General, for appellee.

---

WHITESIDE, Judge.

This is an appeal by appellant, Producers Service Corporation ("Producers"), from a decision of the Board of Tax Appeals. In support of its appeal, Producers raises four assignments of error as follows:

"1. The Board of Tax Appeals erred in concluding that the combination of various raw materials to produce 'fracing' fluid did not qualify as 'manufacturing' within the meaning of R.C. 5711.16 and 5733.061.

"2. The Board of Tax Appeals erred in finding that Appellant was not a manufacturer within the meaning of R.C. 5711.16 and 5733.061.

"3. The Board of Tax Appeals erred in misconstruing and misapplying *Stoneco, Inc. v. Limbach* (1990), 53 Ohio St.3d 170 [560 N.E.2d 578]; *Belden Brick Co. v. Limbach* (1990), 53 Ohio St.3d 176 [560 N.E.2d 583], and *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102 [554 N.E.2d 1310].

"4. The Board of Tax Appeals erred in finding that the Appellant was not entitled to a franchise tax credit pursuant to R.C. 5733.061 for tangible personal property used in manufacturing."

Since this is an appeal from the Board of Tax Appeals ("board") pursuant to R.C. 5717.04, the issue is whether the decision of the board is unreasonable or unlawful and the procedure is controlled by that section, except that App.R. 13 through 33 are applicable. See App.R. 1. Producers is not an oil and gas production company, nor does it drill oil or gas wells or extract oil and gas from such wells. Instead, Producers is an oil and gas fracturing company. The decision of the board described the fracturing business as follows:

"Appellant Producers Service Corp. is involved in oil field production, specifically the hydraulic fracturing of gas and oil wells. Appellant is hired to stimulate the wells so that they will produce as much gas or oil as fast and as economically as possible. The fracturing process is used to create a drainage pattern for the oil or gas to escape the well. A fracturing solution, which is created by appellant at the drilling site, is pumped down into the well and the formation, reaching out about one thousand feet from the drill site. The combination of chemicals in the solution create the fracture which allows the gas or oil to then flow more freely."

On the other hand, Producers, in its brief herein, define its process as follows:

"Fracturing fluid, which is a high viscosity liquid developed by combining, blending and pressurizing a variety of raw materials, serves two purposes. When introduced into a well, at a pressure of approximately 2500 pounds per square inch * * *, it acts as a wedge in opening up a channel in the sandstone formation in which hydrocarbons are trapped * * *. After the wedging is completed, propping agents in the compound take on the character of a drain, permitting the oil and gas in the outer reaches of the geological formations to flow toward the well hole * * *. By preventing fractures of geological foundations from closing, the fracturing material serves as a type of horizontal oil and gas pipe to funnel oil and gas from the farther reaches of the formation to the well bore and casing, to be pumped to the surface."

We find no essential difference in the two descriptions of the process, and Producers contends that there is no question of fact but only a question of law involved.

Producers also states that although there are four assignments of error, only a single issue is before the court, namely:

" * * * Whether the Appellant, Producers Service Corporation, employs its engines, machinery, tools and implements, which unquestionably convert raw materials into a new, more valuable form, 'with a view of making a gain or profit by so doing.' * * *"

These actions were originally commenced before the Tax Commissioner by filing of applications for review and corrections of corporation franchise tax. Case No. 92AP–616 involves the application with respect to the tax years 1986 and 1987. Case No. 92AP–617 involves the application for the tax years 1984 and 1985. The matters were consolidated before the Tax Commissioner and the board and were consolidated for hearing in this court. The Tax Commissioner found the franchise tax assessments against Producers were proper and denied Producers the tax credit it sought pursuant to R.C. 5733.061. The majority of the board affirmed the Tax Commissioner's finding stating in part that:

"[T]he Board finds that appellant is not a manufacturer and is not eligible for the tax credit.

" * * *

"Herein, appellant is not in the business of producing any commodity or product for sale to its customers, but rather selling a service. Appellant simply uses the fracturing solution it creates at the drilling sites to improve the quality of the service of fracturing it sells to interested parties in the oil

and gas business. Thus, while appellant does mix a variety of chemicals together to create a fracturing solution which is an integral part of the entire fracturing process, appellant is not in the business of selling the fracturing solution; appellant is in the business of using said fracturing solution in conjunction with its specialized equipment to create a fracture under the earth's surface which will expedite the production of oil and gas from underground wells."

■ Producers contend that the foregoing reasoning of the board is flawed and is inconsistent with the facts even as found by the board. We agree. We find more persuasive the well-reasoned decision of the chairman of the board in his dissent, wherein he stated in part:

"The tax commissioner and my colleagues on the board have expressed the issue in this appeal to be, whether the taxpayer may be classified as a manufacturer, and thus entitled to the credit allowed for the franchise tax provided by R.C. 5733.061 for certain property acquired and used in manufacturing listed for taxation under R.C. 5711.16. The real issue in this appeal is the *use* by the taxpayer of such property in manufacturing or combining of different materials with a view of making a gain or profit. The record in this appeal, in my view, admits to only one conclusion which is that the taxpayer does combine various different materials to produce a fracturing compound by the use of certain engines, machines and implements listed for taxation under R.C. 5711.16, which compound is used in conjunction with services provided by the taxpayer to persons engaged in the business of oil and gas production. The compound is inserted into the well being completed and, under any commonly understood or statutory definition, is sold.

"The hoppers, tanks, blender, suction and discharge hoses, pump tank, and frac van, as identified and described in the record, are used in manufacturing, have been listed under R.C. 5711.16, taxes timely paid, and the credit extended by R.C. 5733.061, should have been granted by the tax commissioner."

In support of his dissent, the chairman of the board relied upon *Stoneco, Inc. v. Limbach* (1990), 53 Ohio St.3d 170, 560 N.E.2d 578; *Belden Brick Co. v. Limbach* (1990), 53 Ohio St.3d 176, 560 N.E.2d 583; *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102, 554 N.E.2d 1310; and *Eastern Machinery Co. v. Peck* (1953), 160 Ohio St. 144, 51 O.O. 57, 114 N.E.2d 55.

R.C. 5711.16 pertaining to personal property defines "manufacturer" as follows:

"A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or

combining different materials with a view of making a gain or profit by so doing is a manufacturer.  * * * "

This case arises from a request for a tax credit from the corporate franchise tax imposed by R.C. Chapter 5733, which credit is provided by R.C. 5733.061, which reads in pertinent part as follows:

"A credit shall be allowed against the tax imposed by Chapter 5733. of the Revised Code for each taxable year.  The credit shall equal the lesser of the amount of tax otherwise due under such chapter or the difference between:

"(A) The tangible personal property taxes timely paid in the taxable year that were charged against engines, machinery, tools, and implements owned by the taxpayer, listed for taxation in this state under section 5711.16 of the Revised Code as used or designed to be used in refining or manufacturing, and acquired on or after January 1, 1978;  minus

"(B) The taxes that would have been charged against such property and paid during such year had it been listed and assessed for taxation at a percentage of its true value for the year it was required to be listed, determined as follows:"

Since there is an express reference back to R.C. 5711.16, it appears only appropriate that the definition of manufacturer in that section apply for the purposes of determining the credit under R.C. 5713.06.

The Supreme Court recently considered the essential underlying issues herein in the decision upon which both parties rely, *Stoneco, Inc., supra,* paragraph one of the syllabus of which reads as follows:

"For the tangible personal property tax and, consequently, for the R.C. 5733.061 investment credit, manufacturing is the commercial use of engines, machinery, tools, and implements to convert material into a new form, quality, property, or combination and into a more valuable commodity for sale. (*Schumacher Stone Co. v. Tax Comm.* [1938], 134 Ohio St. 529, 13 O.O. 161, 18 N.E.2d 405, overruled.)"

In that case, Stoneco, Inc. produced aggregate or crushed stone for the construction industry by obtaining limestone from quarries, conveying the "shot rock" by truck to a crusher which broke the rock into smaller pieces, and then by another crusher breaking the smaller pieces into still smaller sizes and sorting and screening the resulting particles as aggregate.  The board found that such process did not constitute manufacturing.  The Supreme Court found such determination to be unreasonable and unlawful.  In considering the issue, the Supreme Court stated 53 Ohio St.3d at 173, 560 N.E.2d at 580:

" * * * Stoneco * * * converts a raw material that cannot be used for construction and transforms it into a product that can. Thus, Stoneco uses the crushing, sorting, and mixing equipment in manufacturing.

" * * * [Q]uarrying equipment * * * is normally considered to be mining equipment and not manufacturing equipment. * * * [W]e choose to apply an integrated plant test here in examining whether the quarrying equipment qualifies for the investment credit." Citing *Youngstown Bldg. Material & Fuel Co. v. Bowers* (1958), 167 Ohio St. 363, 5 O.O.2d 3, 149 N.E.2d 1.

The court explained the integrated plant test as follows in 53 Ohio St.3d at 174, 560 N.E.2d at 581:

" * * * [A]n item is part of an 'integrated plant' if it is indispensable to the manufacture of the product. * * *

"Thus, engines, machinery, tools, and implements that are synchronized into the manufacturing operation so that they are indispensable to the manufacture of the marketable commodity are used in manufacturing for the personal property tax and qualify for the R.C. 5733.061 investment credit."

To this extent, Producers engaged in manufacturing of the fracturing fluid by combining, blending and pressurizing a variety of raw materials through the use of engines, machinery, tools and implements. The Tax Commissioner, however, contends that " * * * Producers did not produce the fracturing solution for sale; rather, it used that solution itself in performing its fracturing services. * * * " In other words, apparently the Tax Commissioner is contending that even if Producers engages in manufacturing of the fracturing fluid, it does not sell the fluid but, instead, consumes it while performing a service to oil and gas well operators. This essentially was the finding of the majority of the board. In response, Producers makes two contentions. First, Producers contends that the statutory definition of manufacturer set forth in R.C. 5711.16 does not expressly state that the manufactured product must be "sold" but, instead, states only that it must be produced " * * * with a view of making a gain or profit by so doing * * *." Producers then relies upon *Ares, Inc.*, in which the board had found Ares engaged only in research and development, a finding very similar to that of the board in this case with respect to the finding that Producers performed only services. In the *per curiam* opinion of *Ares, supra,* 51 Ohio St.3d at 104, 554 N.E.2d at 1312, it is stated:

" * * * Under this case, thus, Ares is a manufacturer because it received sheet, bar, and tube steel products, added to their value by altering and combining them, and produced prototype weapons to earn a profit."

Although it is true that Producers performs a service, the board did not clearly define the nature of the service. Although perhaps oversimplified, basically, the service consists of on-site manufacturing of fracturing fluid by use of machinery and equipment, pumping the fracturing fluid into the customer's well and leaving it there. It is difficult to conceive how it can seriously be contended that the fracturing fluid is not "sold" to the customer. Although we agree with Producers that the express statutory purpose is the making of a profit, we cannot ignore the language in *Stoneco*, 53 Ohio St.3d at 173, 560 N.E.2d at 580, that part of the definition of manufacturing is to " * * * convert material * * * into a more valuable commodity for sale. * * * " The finding of the board was not that the manufactured fracturing solution was consumed in performing the service but, instead, that Producers left it in the well "for its customer to dispose of." Under the circumstances, we are unable to distinguish the situation here from that in *Stoneco, supra*, or in *Belden Brick Co., supra*. Although appellant has raised four assignments of error, the single determination is dispositive of all of the assignments of error.

The Tax Commissioner, however, contends that there is an additional reason why Producers should not be entitled to the R.C. 5733.061 tax credit. The Tax Commissioner points out that in order to qualify for the tax credit under R.C. 5733.061, the personal property on which the tax was paid must have been listed for taxation as manufacturing property. However, Producers points out that the board found contrary to the Tax Commissioner's contentions, and that the Tax Commissioner has not appealed from the board's determination. In its opinion, the board stated that:

"In order to claim said tax credit, appellant must have acquired the property on or after January 1, 1978, listed the property under R.C. 5711.16 as used or designed to be used in refining or manufacturing, and paid the tangible personal property tax on it in a timely fashion in the appropriate tax year. See *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102, 104 [554 N.E.2d 1310, 1312]. Based upon the evidence presented by appellant to the Board, it appears that appellant acquired all of the subject property after January 1, 1978, listed said property as used in manufacturing, and paid the associated personal property taxes in a timely fashion."

Having neither appealed from nor otherwise objected to the board's finding, the Tax Commissioner cannot for the first time in Producers' appeal to this court contend that this finding of the board is erroneous. The Tax Commissioner's contention that the board did not make this finding because it used the words "appears that" has no merit whatsoever. The language of the board constitutes an affirmative finding especially in light of the next sen-

tence of the board's decision which states that "[t]hus, the only question before this Board is whether appellant can be classified as a manufacturer * * *." Accordingly, we accept the finding of the board with respect to the listing of the property for taxation and the payment of the personal property taxes.

Nevertheless, for the reasons stated above, we must conclude that the board's determination that Producers cannot be classified as a manufacturer under R.C. 5711.16 is both unreasonable and unlawful since the circumstances in this case, although different, cannot be distinguished from *Stoneco*. All four assignments of error are well taken, and the tax credit should have been granted.

For the foregoing reasons, all four assignments of error are sustained. The decision of the Board of Tax Appeals being unreasonable and unlawful is reversed and this cause is remanded to the Board of Tax Appeals for such further proceedings with respect to the tax credits as may be in accordance with law consistent with this opinion.

*Decision reversed*
*and cause remanded.*

PETREE and TYACK, JJ., concur.