## P. Lorrilard Company v. Ross, Sheriff.

(Decided February 7, 1919.)

### Appeal from Jefferson Circuit Court.

1. Taxation—Manufacture.—Under a statute exempting from local taxation "raw material actually on hand at their plant for the purpose of manufacture" raw or green tobacco on hand at a factory that is only given some preliminary treatments at the factory and then sent to other factories to be put in shape for sale on the market is not exempt from local taxation.

2. Manufacture—Meaning of Word.—In the meaning of the statute exempting "raw material on hand for the purpose of manufac-

ture" raw material is not on hand for the purpose of manufacture unless the manufacture of such raw material at the plant where it is found is so complete as that the product may be sent out from that plant and sold on the market as a finished product.

3.    Manufacture—Definition of.—It is not the means or methods employed nor the nature or number of processes resorted to or the size of the factory or the number of hands it employs or the volume of machinery in use, but the result accomplished that determines whether the article is manufactured or not.

4.    Taxation—When Raw Material Exempt From—Manufacture— What is.—The test of whether raw material is on hand at a factory for the purpose of being manufactured is this—is the raw material converted at that factory or plant into a finished product complete for the final use for which it was intended or so completed as that in the ordinary course of the business of the concern it is ready to be put upon the open market for sale to any person wishing to buy it?

5.    Taxation—Raw Material—When Exempt From—Manufacture— What is.—It is not essential before the exemption applies that raw material should be converted at the factory into a finished product fit for the final use for which it was intended. It will be sufficient if it is on hand for the purpose of being there converted into an article ready for sale on the open market although after the product has been so sold it may be put by other parties to the final use for which it was intended.

6.    Taxation—Notice to Taxpayer of Raise of Assessment.—Under section 4122 of the Kentucky Statutes if the Board of Supervisors raises the list of the taxpayer he must have notice of the raise or else it will be void.

7.    Taxation—Notice to Taxpayer of Raise of Assessment.—Where a taxpayer furnishes to the Tax Commissioner a list of property that he claimed to be exempt from taxation and the Tax Commissioner accepted the list as exempt, and thereafter the Board of Supervisors without notice to the taxpayer placed the property in a list subject to taxation, this was in effect raising the assessment without notice and the action of the Board of Supervisors was void.

8.    Taxation—Injunction.—Where a Board of Supervisors raises without notice the list of a taxpayer he may enjoin the collection of the taxes.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY and CHARLES W. MILNER for plaintiff.

J. MATT CHILTON and NAT C. CURETON for defendant.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Overruling motion to dissolve injunction.

This is a motion made before me to dissolve an injunction issued by a judge of the Jefferson circuit court

restraining W. E. Ross, as sheriff of Jefferson county, from collecting a certain tax bill against P. Lorrilard Company. There is no dispute about the facts which appear in the petition for an injunction filed by P. Lorrilard Company against the sheriff, to which a demurrer was overruled and thereupon the injunction granted. The only question in the case is—Did the facts set out in the petition authorize the injunction?

The P. Lorrilard Company is a New Jersey corporation engaged in the business of manufacturing tobacco and tobacco products. In the conduct of its business it maintains various factories in the United States, located at Louisville, Kentucky, and at cities situated in New Jersey, Ohio, Maryland and other states. Its plant in Louisville consists of six large buildings, at which there are constantly employed several hundred hands. These buildings are equipped with engines, machinery and other appliances used in the course of its business. It buys tobacco in the raw or green state and ships it to its plant at Louisville, at which place it is regraded by hand and then stemmed and redried by machinery or hand; after it has been thus treated the tobacco is packed into hogsheads and shipped to other factories of the P. Lorrilard Company, where it is manufactured into plug tobacco, twist tobacco, cigars and smoking tobacco.

On September 1, 1917, it had on hand at its plant in Louisville tobacco of the value of $903,684.00 which had been redried but not stemmed, and tobacco of the value of $298.032.00 which had been both redried and stemmed. In October, 1917, it made out and delivered to the tax commissioner of Jefferson county, in due time and manner, a schedule of all of the property owned by it that according to its view was subject to assessment in Jefferson county for state or county purposes, which schedule was accepted by the tax commissioner as made out. In this schedule it listed for assessment at a specified value certain machinery and implements used by it in connection with its factory, and under the title in the schedule "raw material at plant and products in course of manufacture" it gave the value of such raw material and products in course of manufacture at $1,201,716.00, this being the total value of the two classes of tobacco heretofore set out.

It further appears that the tax commissioner accepted as correct the schedule as made out by the P. Lorrilard Company, thus leaving exempt from taxation this tobacco, but the board of tax supervisors of Jefferson county changed the entries which the tax commissioner had made in his books in conformity with the schedule, by so altering the entries as to make the company liable for taxation on the two items of tobacco, which it had returned at the value before mentioned to the tax commissioner under the head "raw material at plant and products in course of manufacture," and this without any notice of its intention to alter the entries or its purpose to subject this tobacco to taxation and without giving the company any opportunity to appear before the board of supervisors and resist the effort to have this tobacco, which had been accepted as exempt from assessment and taxation by the tax commissioner, assessed and valued for taxation by the board of supervisors.

On the facts of the case it is the contention of the P. Lorrilard Company that this tobacco in its factory at Louisville, which had been redried but not stemmed as well as that which had been both redried and stemmed, was exempt from assessment and taxation for county purposes under that provision of the act of 1917 (that may now be found in section 4019a-10, volume 3, Kentucky Statutes) exempting from local taxation: "machinery and products in course of manufacture of persons, firms or corporations actually engaged in manufacturing and their raw material actually on hand at their plants for the purpose of manufacture," the claim being that this tobacco comes within the words "raw material actually on hand at their plants for the purpose of manufacture."

We had before us in the case of American Tobacco Company v. City of Bowling Green, 181 Ky. 416, the construction of the provision of the statute here in question. In that case the facts were these:

The tobacco company had a plant at Bowling Green at which green or raw tobacco that it bought was graded according to quality, redried, a good part of it stemmed, and then put in hogsheads and shipped to other plants of the company situated at other places out of the state for

manufacture into various kinds of tobacco in common use.

It had no machinery in its plant and no manufacturing was done there except the treatment of the raw tobacco preparatory to its shipment to other factories for its manufacture.

Really the only difference between the methods employed at the plant of the Lorrilard Company at Louisville and those employed at the plant of the American Tobacco Company at Bowling Green consists in the fact that the Bowling Green plant was a small one where the work of rehandling, redrying and stemming the tobacco was done by hand while the plant of the Lorrilard Company, at Louisville, is a very large one and the redrying, stemming and steaming is done by machinery. At neither plant was the tobacco manufactured into cigars, plug tobacco, smoking tobacco or cigarettes. It was sent to other factories at other places to be so manufactured.

Under these facts, about which there is no dispute, we are unable to perceive any difference in the two cases that would authorize a distinction in the construction of the statute. The difference in the method employed at the two plants was only one of degree.

At neither factory was the tobacco turned out as a finished product or intended to be put upon the market for sale to any person wanting to buy it and at both places the tobacco was subjected to certain treatment that was a necessary part of the process to which the tobacco was subjected in converting it from raw material into a finished or manufactured product.

In the Bowling Green case the court said that the statute contemplated that the raw material must be manufactured at the place where the exemption from taxation was sought before the statute became applicable and that the treatment the tobacco received at Bowling Green did not constitute manufacturing in the meaning of the statute.

Elaborating a little on this definition, my opinion is that raw material on hand at a factory or plant for the purpose of manufacturing is not exempt from local taxation unless the manufacture of such raw material at the plant where it is found is so complete as that the product

may be sent out from that plant and sold on the market as a finished product.

The purpose of the legislature in allowing this exemption was to encourage the location in this state of manufacturing plants at which everything that was necessary to convert the raw material into a finished product for sale on the markets should be done at the factory or plant in this state where the raw material was on hand; and this legislative purpose should not be lost sight of in the construction of this statute.

In other words, if the Lorrilard Company at its factory in Louisville put the raw or green tobacco that it purchased into the form of smoking or chewing tobacco or cigars or other types of tobacco that are commonly sold to consumers in the open market then the raw or green tobacco at this factory or at some other building or buildings located in the city that were used in connection with and as a part of the factory and that constituted its plant at Louisville would be exempt from local taxation.

But it is admitted that the Lorrilard Company did not finish at its factory or plant in Louisville the manufacturing process to which this tobacco was subjected before it was placed on the market for sale.

It merely subjected it to certain methods of treatment and then sent it to other factories where the manufacturing process was completed and the tobacco made ready for sale in the open market as a finished product.

I do not think the number of processes or the various kinds of treatment that the raw material is subjected to before it becomes a finished product or the means or methods employed in giving it this treatment are material. Some articles might be converted by one process alone from raw material into a finished product fit and suitable to be placed on the open market and sold for the purposes and uses to which it was intended to be put, while it might be necessary to subject other articles to perhaps three or even six or a dozen separate and distinct treatments before they could or would be put on the market as a finished product or offered for sale to customers generally for the purposes or uses to which it was intended to put them. It is not the means or methods employed or the number or nature of the pro-

cesses resorted to, but the result accomplished that determines whether the article is manufactured or not.

Nor is the question of exemption from or liability to taxation to be determined by the size of the factory or the number of hands it employs or the volume of machinery in use. It is wholly immaterial whether the factory is a small one or large one or whether the processes to which it subjects the raw material are performed by hand or by machinery.

Numbers of cases may be found in which the courts have defined the words "manufacture," "manufacturer," "manufacturing," "manufactured," but in all these cases the courts constantly kept in mind the purpose of the legislation and endeavored to give such a construction to these words as would carry out the legislative intent, and on account of this inclination different meanings have been ascribed to the words; but it may safely be said that the general rule is that no article is considered manufactured until it has been put into condition for sale on the open market for the purpose for which it was intended to be used.

Out of many cases supporting this view the following may be selected:

In Hartranft v. Wiegmann, 121 U. S. 609, 30 Law Ed. 1012, the question before the court was when shells found on the sea shore should be considered as manufactured for commercial purposes. It appears from the opinion that the shells were subjected to certain treatments which the court, in holding did not constitute manufacture, said: "They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws. Washing and scouring wool does not make the resulting wool a manufacture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton." . . . "In Frazee v. Moffit, 20 Blatchf. 267, it was held that hay pressed in bales, ready for market, was not a manufactured article, though labor had been bestowed in cutting and drying the grass and bailing the hay. In Lawrence v. Allen, 48 U. S., 7 How. 785 (12:914), it was held that India rubber

shoes, made in Brazil, by simply allowing the sap of the India rubber tree to harden upon a mold, were a manufactured article, because it was capable of use in that shape as a shoe, and had been put into a new form, capable of use and designed to be used in such new form. In United States v. Potts, 9 U. S. 5 Cranch. 284 (3:102), round copper plates turned up and raised at the edges from four to five inches by the application of labor, to fit them for subsequent use in the manufacture of copper vessels, were held not to be manufactured copper. In the case of United States v. Wilson, 1 Hunt's Merchants' Magazine, 167, Judge Betts held that marble which had been cut into blocks for the convenience of transportation was not manufactured marble, but was free from duty, as being unmanufactured.''

In Tide Water Oil Company v. United States, 171 U. S. 210, 43 Law Ed. 139, the court said: ''The primary meaning of the word 'manufacture' is something made by hand, as distinguished from a natural growth; but as machinery has largely supplanted this primitive method, the word is now ordinarily used to denote an article upon the material of which labor has been expended to make the finished product. Ordinarily, the article so manufactured takes a different form, or at least subserves a different purpose from the original materials; and usually it is given a different name. Raw materials may be and often are subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. . . .

. . . ''It is not always easy to determine the difference between a complete and a partial manufacture, but we may say generally that an article which can only be used for a particular purpose, in which the process of manufacture stops short of the completed article, can only be said to be partially manufactured within the meaning of this section.''

In Kidd v. Pearson, 128 U. S. 1, 32 Law Ed. 346, the court said: ''Manufacture is transformation—the fashioning of raw materials into a change of form for use.''

In Lawrence v. Allen, 7 How. U. S., 12 Law Ed. 914, the question before the court was when rubber should be treated as a manufactured article, and the court said that the word ''manufacture'' ''is making an article,

whether by hand or machinery, into a new form, capable of being used, and designed to be used in ordinary life."

In Bogard v. Tyler, 21 Ky. Law Rep. 1452, it was held that a saw mill at which lumber was sawed for sale on the market was a manufacturing establishment because the evidence showed that "the saw mill was engaged in manufacturing lumber for the market."

To the same effect is Graham v. Magamm-Fawk Lumber Company, 117 Ky. 192. Other illustrative cases are: Sharp v. Hasey, 134 Wis. 618; State v. Tichenor Antiseptic Co., 118 La. 686; In Re Toledo Portland Cement Co., 156 Fed. 83.

In Century Dictionary the word "manufacture" is defined as "the production of articles for use from raw or prepared materials, by giving to these materials new forms, qualities, properties or combinations, whether by hand labor or by machinery." And in Webster the word "manufacture" is defined: "To work, as raw or partly wrought materials, into suitable forms for use."

Giving to the word "manufacture" its commonly understood meaning and the definition laid down in the authorities cited and the meaning I think it was intended it should have in this statute it is an easy matter to determine in every case whether or not the raw material at any plant or factory is exempt from local taxation, the test being—Is the raw material converted at that factory or plant into a finished product complete for the final use for which it was intended, or so completed as that in the ordinary course of the business of the concern it is ready to be put upon the open market for sale to any person wishing to buy it? I do not think it essential that before the exemption applies the raw materials should be converted at the factory or plant where it is found into a finished product fit and ready for the final use to which it was intended to be put. For example, green or raw hides that are intended in their final use to be converted into boots or shoes might well be considered as a manufactured product within the meaning of the statute, when by preliminary processes they had been put into condition for sale on the open market as finished hides that persons engaged in the manufacture of shoes or boots would buy to convert into these articles; and so a plant that was engaged in the manufacture of logs

into lumber or doors or sash or other finished products ready for sale on the open market would be entitled to the exemption, although after the product had been sold in the open market it was put by other parties to the final use for which it was originally intended.

But where raw material is only subjected to certain preliminary or partial processes no one or all of which are sufficient to convert it into an article ready for sale on the open market or into an article ready for the final use intended in its manufacture, these processes do not constitute manufacturing within the meaning of the statute. A ready example of this class of partial manufacturing is found in the case we have. Here the tobacco in its raw state was on hand for the purpose of being subjected to certain processes that would convert it into a suitable article for sale to consumers. It was not put on the open market as a finished or completed product until it had been subjected to all the various treatments that converted it from raw or green tobacco into cigars, cigarettes, chewing or smoking or other types of tobacco commonly in use. It continued to remain in a partially manufactured condition until the process of manufacture had been entirely completed and the tobacco was ready for sale to consumers in the open market.

If the construction contended for in this case by the Lorrilard Company should obtain all raw material on hand at a plant or factory in this state at which it was subjected to some preliminary process or treatment would be exempt from taxation although no part of the material, if it had been subjected to these processes or treatments, could be sent out from the factory as a finished product. For example it is necessary in the manufacture of tobacco that it should be regraded. Regrading is one of the processes that green or raw tobacco is subjected to before it becomes a finished product, and so if a factory in this state purchased raw or green tobacco only for the purpose of regrading it the raw or green tobacco on hand for the purpose of regrading would be as clearly exempt from taxation as if it was on hand for the purpose of being regraded, redried and stemmed. But raw tobacco on hand merely for the purpose of regrading it or classifying or drying it without intending to subject it to the other treatments that would convert

it into a finished product that might be sold on the open market could not be said to be on hand for the purpose of manufacture. Plainly in such a case the raw tobacco would only be on hand for the purpose of partial manufacture.

We are therefore of the opinion that the tobacco was subject to assessment and taxation.

The remaining question is—Was the Lorrilard Company entitled to notice and an opportunity to be heard before the board of supervisors could place this tobacco under a schedule subjecting it to taxation?

Keeping in mind the fact that the Lorrilard Company reported this tobacco to the tax commissioner under an item in the schedule that exempted it from assessment and taxation and that this schedule so made out was accepted as correct by the tax commissioner, and thereafter the board of supervisors took the tobacco from under the item in the schedule that exempted it from taxation and placed it under another item that subjected it to assessment and taxation, we have no doubt that under the statute and many decisions of this court the Lorrilard Company was entitled to notice of the contemplated action of the board of supervisors, and also to opportunity to be heard before them.

It is provided in section 4120 of volume 3, Kentucky Statutes, that the board of supervisors "shall make a careful examination of the tax commissioner's books and each individual list thereof and may increase or decrease any list, and shall list all property omitted by the assessor (tax commissioner) which may be subject to taxation in the county."

It is further provided in section 4122 that "The sheriff shall notify all such taxpayers whose list has been increased or assessed by the board, and also notify them of the time to which the board adjourned."

It is further provided in section 4123 that on the reassembling of the board that they shall hear complaints made by persons whose property was raised or assessed.

These provisions clearly show that the board of supervisors cannot raise any assessment as returned by the tax commissioner or list for assessment property omitted by the taxpayer and the tax commissioner without first giving notice to the taxpayer affected of its action, and opportunity to be heard in opposition to its

KENTUCKY REPORTS        [Vol. 183.

intention to raise the assessment or list for assessment omitted property.

In this case the effect of the action of the tax commissioner in accepting as correct the schedule that exempted this property from assessment and taxation was the same as if it had not been reported at all by the taxpayer to the tax commissioner or had been omitted from assessment by the tax commissioner. In other words this property was assessed for the first time by the board of supervisors, therefore the taxpayer was entitled to notice and opportunity to be heard. Not having received any notice of the action of the board of supervisors its action was void and did not authorize the sheriff to collect any taxes on this assessment and the Lorrilard Company had the right to the injunction. Boske v. Louis Marx & Bros., 161 Ky. 460.

Judges Settle, Hurt and Sampson heard this matter with me and concur in what I have written and in the conclusion reached.

The motion to dissolve injunction overruled.