GENERAL CIGAR CO., INC., Plaintiff and Appellant, v. SECRE-TARY OF THE TREASURY, Defendant and Appellee.

No. 11265–268.  Argued May 2, 1955.—Decided June 29, 1955.

Sifre & Ruiz Suria for appellant.   José Trías Monge, Attorney General, and Carlos N. Souffront, Assistant Attorney General, for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

General Cigar Co., Inc., a corporation authorized to do business in Puerto Rico, has been and is engaged in the manufacture or production of cigars, an industrial activity which it has carried on and still carries on in its factories located in the continental United States.  In the manufacture of the finished product "cigar" the corporation has used and uses, among others, the raw material known in the tobacco industry as "leaf-stripped tobacco of superior quality" as well as that known as "cut tobacco."

The Secretary of the Treasury assessed and levied a property tax on the leaf-stripped tobacco of superior quality and on the cut tobacco in the possession of General Cigar Co., Inc., in different towns of the Island on January 1, 1951 and 1952.

After paying that part of the property tax with which it agreed, the corporation filed four complaints in the Superior Court alleging that the leaf-stripped tobacco of superior quality and the cut tobacco were raw materials and, as such, exempt from the payment of property tax by virtue of Act No. 61 of May 5, 1945, as amended by Act No. 30 of March 30, 1950.

The trial court held that said property was not tax exempt because the petitioner did. not manufacture the finished product "cigar" in Puerto Rico and consequently dismissed the complaints. The petitioner appealed and at its behest we consolidated the four cases for hearing before this Court.

The appellant charges the trial court with the commission of the following two errors:

"1. The trial court erred in failing to sustain the complaints on the ground that the controversy involved has already been decided by this Court in favor of plaintiff-appellant's contention in *Treasurer* v. *Tax Court; B. Suárez, Inc.*, 74 P.R.R. 253, thus failing to follow the doctrine of *stare decisis*.

"2. The trial court erred in holding that under Act No. 61 of May 5, 1945 (Sess. Laws, p. 220), as amended by Act No. 30 of March 30, 1950 (Sess. Laws, p. 86), it is necessary that the finished article be manufactured in Puerto Rico in order for the raw material used in its manufacture to be tax exempt."

■■ The problem raised hinges on the construction of Act No. 61 of May 5, 1945 as amended by Act No. 30 of March 30, 1950, which, insofar as pertinent, provides:

"Section 1.—For the purposes of this Act, by 'raw material' shall be understood not only products in their natural form derived from agriculture or from the so-called extractive industries, but any by-product, and semi-manufactured product, or

any finished product, provided the same is used either as an ingredient or an integral part of another industrial product, so that when the industrial process is carried out, said raw material shall come wholly and completely to form a part of the finished product, or shall be completely consumed, be wholly extinguished, and cease to exist.

"Section 2.—By 'finished product' shall be understood that article for commerce which is obtained by combining two or more raw materials or submitting one or more of them to industrial processes, provided that in one or the other case predetermined methods are used and labor is used directly or indirectly.

"Section 3.—The raw material that can be guaranteed to be destined for the production of finished articles, shall be exempt from the payment of property taxes while it remains in the possession of the producer of the finished article.

"Section 4.—The Treasurer of Puerto Rico shall provide, through rules and regulations to be promulgated for the purpose, the necessary measures for carrying out this Act, and he may demand of the taxpayers the presentation of any evidence which might be necessary for the purpose. The Treasurer of Puerto Rico shall also have power to make the general regulations necessary for the enforcement of this Act in everything not inconsistent with the provisions hereof."

There is no controversy as to the fact that under Act No. 61, the "leaf-stripped tobacco of superior quality" and the "cut tobacco" are "raw materials" which are used in the manufacture of cigars. Nor is there controversy as to the fact that it could be guaranteed that said "raw material" was destined for the production of finished articles as well as that on the taxable day, January 1, 1951 and 1952, the material was in the possession of the producer of the finished article. The conflict arises from the fact that the producer, appellant in this case, manufactured and manufactures the finished article (cigars) outside Puerto Rico.

The appellant contends that this question has already been decided by this court in *Treasurer v. Tax Court; Suárez, Inc.*, 74 P.R.R. 253. In that case where the issue was

confined to determining the constitutionality of the retro-active application of Act No. 30 of March 30, 1950, amending Act No. 61 of May 5, 1945, we said:

"In *P. Lorrilard Co.* v. *Ross,* 209 S. W. 39, the taxpayer stemmed tobacco in Kentucky and then sent it to his own factories located in other states, where it was manufactured into cigarettes, cigars and chewing tobacco. A state law of Kentucky provided that the products in the course of manufacture of persons, firms or corporations, actually engaged in manufacturing would be exempted from taxation and that the raw material actually on hand at their plants would also be exempted from taxation as long as said raw material was used for the purpose of manufacture. It was held that in view that the final products (cigarettes and cigars) were not manufactured in Kentucky, that is in the place where the exemption was requested, the stemmed tobacco was not exempted under the afore-mentioned Act. From said Act of Kentucky it appeared that the legislative intent was to the effect that the exemption be granted only if the final product was manufactured in Kentucky. Said intention does not appear from Act No. 61 of 1945. What is required is that the raw material be used as ingredient in the manufacture of another industrial product or as an accessory or integral part of said other product. The raw material was exempted while it was in the possession of the producer. It is not stated in the law, nor inferred therefrom, that the final industrial product was manufactured in Puerto Rico. If the legislative intent would have been exclusively that of stimulating the manufacture of cigarettes, cigars or other final products in Puerto Rico, then there would have been a margin for the construction adopted by the Supreme Court of Kentucky in the afore-cited cases. However, the legislative intent could very well have been that of stimulating the production of raw material in Puerto Rico for the purpose of exporting it to be used in subsequent manufacturing processes in other places."

We need not stop to discuss whether or not the excerpt from the *Suárez* case is *"dictum."* It is obvious that in making such statements we were referring to the scope of the exemption granted by Act No. 61 before it was amended. Its § 3 provided:

"Section 3.—The 'raw material' that can be guaranteed to be destined for the production of finished articles, shall be exempt from the payment of property taxes while it remains in possession of its producer, of the importer into Puerto Rico, of the producer of the finished article, or of any intermediate distributor who may have it for sale or delivery to a producer of finished articles in the manufacture of which this raw material enters."

Pursuant to this provision, the tax exemption applied (1) when the "raw material" appeared in possession of its producer, (2) when it appeared in possession of the importer into Puerto Rico, (3) when it appeared in possession of the producer of the finished article, and (4) when it appeared in possession of any intermediate distributor who may have had it for sale or delivery to a producer of finished articles. It was mainly on the precise ground that the "raw material" was exempted from the payment of a property tax "while it remains in possession of its producer" that we held in the *Suárez* case that "the legislative intent could very well have been that of stimulating the production of raw material in Puerto Rico for the purpose of exporting it to be used in subsequent manufacturing processes in other places." It may be noticed that we did not make an unqualified statement that such was the legislative intent but we merely pointed it out as a possibility. At any rate, the argument stated in the *Suárez* case in pointing out this possibility lost its persuasive force when Act No. 30 of March 30, 1950 amended § 3 of Act No. 61. "The raw material"—the Act now provides—"that can be guaranteed to be destined for the production of finished articles, shall be exempt from the payment of property taxes *while it remains in the possession of the producer of the finished article.*" (Italics ours.) In this way the tax exemption on the "raw material" was eliminated when it remained in the possession of its producer. There is no basis therefore to assert that the legislative intent in amending in 1950 § 3 of Act No. 61 could have been that of stimulating the

production of raw material in Puerto Rico for the purpose of exporting it to be used in the manufacture of finished articles in other places. This is so because in eliminating the exemption on the raw material which does not remain in the possession of the producer of the finished article, the production of raw material is not being encouraged either in its natural form, as a by-product or as any semi-manufactured or finished product, as defined in the Act.

As we have already seen, pursuant to § 3 of Act No. 61 as amended by Act No. 30, 1950, in order that the "raw material" defined in § 1 of said Act be tax exempt, the following two requirements are essential: (1) that it can be guaranteed to be destined for the production of finished articles, and (2) that it remain in possession of the producer of the finished article. What was the legislative intent in requiring the guarantee that the "raw material" be destined for the production of finished articles? It could be none other than to stimulate the production of finished articles in Puerto Rico. What other practical purpose could our legislature pursue in exempting the raw material in possession of the producer of the finished article from the payment of taxes, if the final manufacturing process was to be performed outside Puerto Rico? It is unquestionable that these laws on tax exemption are inspired by an attempt to promote and stimulate the manufacturing industry in Puerto Rico and not in any other country. When Bill No. 365 which later became Act No. 30 of March 30, 1950, was approved in the House of Representatives of Puerto Rico, the then representative Mr. Benjamín Ortiz in explaining its scope stated, among other things, the following: "The amendments suggested for this Act are directed to block slightly this wide loophole [referring to the list of products which would remain exempt from property taxes] but always maintaining *the legislative intent of stimulating industry.*" (Italics ours.) And we have already seen that if the raw material in the possession of the producer of the

finished article is to be used outside Puerto Rico in the final process of elaboration or manufacture of the finished article, the tax exemption of that raw material can in no way stimulate the manufacturing industry in Puerto Rico. It may be urged that this Act No. 61, as amended by Act No. 30, 1950, stimulates the manufacturing industry of those semi-manufactured or finished products that the Act defines as raw material in its § 1. It is clear to us, however, that that could not have been the legislative intent since said "raw material" in the possession of its producer is not tax exempt if the latter in turn is not the producer of the finished article. If the legislative intent had actually been that of stimulating the production of raw material in Puerto Rico, the Act would not have limited the exemption to those cases where the raw material remains in the possession of the producer of the finished article. This restriction is consistent with the tax exemption granted to industries established or to be established in this Island, by virtue of Act No. 184 approved on May 13, 1948. This Act exempts from the payment of property tax, among the various tax exemptions it grants, the raw material which the industry uses in its operation. Furthermore and as appellant itself points out, it is unquestionable that such industries are engaged in the production of finished articles in Puerto Rico. It is clear therefore that the legislative intent has been to stimulate the manufacture of finished articles in Puerto Rico.

▆ The fact that it is not expressly stated in Act No. 61, as amended, that the finished article must be manufactured in Puerto Rico does not prevent us from so holding if it appears from the context of the law that such was the legislative intent. *P. Lorrilard Co.* v. *Ross*, 209 S.W. 39.

▆ Another argument against the appellant's contention is that if a construction contrary to the one we give here to Act No. 61 were to prevail, it would be impossible to enforce this Act. Only raw material which can be guaranteed to be destined for the production of finished arti-

cles is tax exempt. The raw material must be in the possession of the producer of the finished article. Once that raw material is taken out of Puerto Rico, the Government of the Commonwealth would lose all control over it and it could then happen (a) that it would not be used in the production of finished articles, and (b) that it would be used by a producer of finished articles other than the one in whose possession the property was when the exemption was granted. In either of these forms the requirements of the statute would be evaded.

The trial court did not err in holding that Act No. 61 as amended in 1950 exempts from property tax only such raw material as is guaranteed to be destined for the production of finished articles in Puerto Rico.

The judgments appealed from will be affirmed.

Mr. Justice Sifre did not participate herein.

---

## ORDER

### ON RECONSIDERATION

San Juan, Puerto Rico, July 29, 1955.

The preceding motion for reconsideration is denied. The case of *Consolidated Cigar Corporation* v. *Secretary of the Treasury*, per curiam decision of May 10, 1954, is expressly overruled.

It was so ordered by the Court as witness the signature of the Chief Justice. Mr. Justice Sifre did not participate herein.

A. C. SNYDER,
Chief Justice

Certify:
IGNACIO RIVERA,
Secretary