GENERAL CIGAR Co., INC., demandante y apelante, *v.* SECRETARIO DE HACIENDA, demandado y apelado.

Números 11265–268.

*Sometido:* 2 de mayo de 1955. *Resuelto:* 29 de junio de 1955.

*Sifre & Ruiz Suria,* abogados de la apelante; *Hon. Secretario de Justicia José Trías Monge y Carlos N. Souffront, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

La corporación General Cigar Co., Inc., autorizada a hacer negocios en Puerto Rico, se ha venido dedicando y se dedica a la fabricación o producción de cigarros, actividad industrial ésta que realizaba y realiza en sus fábricas sitas en Estados Unidos continentales. En la fabricación del producto terminado "cigarro", dicha corporación ha utilizado y utiliza, entre otras, la materia prima que se conoce en la industria tabacalera como "tabaco superior despalillado" así como la que se conoce como "picadura de tabaco".

El Secretario de Hacienda tasó e impuso contribución sobre la propiedad al tabaco superior despalillado y a la picadura de tabaco que la General Cigar Co., Inc., tenía en su poder, en distintos pueblos de la isla, el día primero de enero de los años 1951 y 1952.

Luego de pagar aquella parte de la contribución sobre la propiedad mueble con la cual estaba conforme, la indicada corporación interpuso cuatro querellas ante el Tribunal Superior, alegando que el tabaco superior despalillado y la picadura de tabaco eran materia prima y como tal estaba exenta del pago de contribuciones sobre la propiedad por virtud de la Ley núm 61 de 5 de mayo de 1945 (pág. 221), según fué enmendada por la Ley núm. 30 de 30 de marzo de 1950 (Leyes de 1949–50, pág. 87).

El tribunal a quo resolvió que dicha propiedad no estaba exenta del pago de contribuciones porque la querellante no fabricaba el producto terminado "cigarro" en Puerto Rico

y como consecuencia desestimó las querellas. Apeló la querellante y a solicitud de ésta consolidamos los cuatro casos a los fines de su tramitación ante este Tribunal.

La apelante imputa a la corte sentenciadora la comisión de los siguientes dos errores:

"1—Erró el tribunal a quo al no declarar con lugar las querellas en estos casos, por la razón de que la controversia envuelta en los mismos ya ha sido resuelta en forma favorable a la contención de la demandante-apelante por ese Honorable Tribunal en el caso de *Tesorero* v. *Tribunal de Contribuciones de Puerto Rico, B. Suárez, Inc., Interventora,* 74 D.P.R. 274, dejando en esa forma de seguir la doctrina del *stare decisis*.

"2—Erró el tribunal a quo al resolver que bajo la Ley núm. 61 de 5 de mayo de 1945, según enmendada por la Ley núm. 30 de 30 de marzo de 1950, es un requisito que el artículo terminado sea elaborado en Puerto Rico para que la materia prima utilizada en su elaboración pueda gozar de la exención contributiva concedida por dicha ley."

■■ El problema planteado gira alrededor de la interpretación de la Ley núm. 61 de 5 de mayo de 1945 según quedó enmendada por la Ley núm. 30 de 30 de marzo de 1950, la que en lo pertinente dispone:

"Artículo 1.—A los efectos de esta Ley se entenderá por 'materia prima' no sólo los productos en su forma natural derivados de la agricultura o de las llamadas industrias extractivas, sino cualquier subproducto (*byproduct*), cualquier producto parcialmente elaborado (*semi-manufactured*), o cualquier producto terminado, siempre y cuando que se utilice, bien como ingrediente o como parte integrante de otro producto industrial, de modo que al realizarse el proceso industrial, dicha 'materia prima' pase totalmente y por completo a formar parte del producto terminado, o se consuma por completo, se extinga totalmente, y deje de existir.

"Artículo 2.—Se entenderá por 'producto terminado' aquel artículo para el comercio que se obtenga uniendo dos o más materias primas o sometiendo una o más de éstas a procesos industriales, siempre que en uno u otro caso se usen métodos predeterminados, y se aplique mano de obra en forma directa o indirecta.

"Artículo 3.—La 'materia prima' que pueda garantizarse estar destinada a la producción de artículos terminados, estará exenta del pago de contribuciones sobre la propiedad mientras se encuentre en poder del productor del artículo terminado.

"Artículo 4.—Mediante reglas y reglamentos que al efecto promulgue, el Tesorero de Puerto Rico dispondrá los métodos necesarios para hacer efectiva esta Ley, pudiendo exigir de los contribuyentes la presentación de cualquier evidencia que pudiera ser necesaria al efecto. Tendrá, además, el Tesorero de Puerto Rico, poder de reglamentación general para hacer esta Ley efectiva en todo lo que no sea incompatible con lo aquí dispuesto."

No hay controversia en cuanto a que el "tabaco despalillado superior" y la "picadura de tabaco" es bajo la Ley núm. 61, "materia prima" que entra en la fabricación de cigarros. Tampoco la hay en cuanto a que podía garantizarse que dicha "materia prima" estaba destinada a la producción de artículos terminados así como que el día tributable, primero de enero de los años 1951 y 1952, la misma se encontraba en poder del productor del artículo terminado. La discrepancia entre las partes surge del hecho de que el productor, que lo es la apelante en este caso, fabricaba y fabrica el producto terminado (cigarros) fuera de Puerto Rico.

La apelante sostiene que esta cuestión fué ya resuelta por nosotros en el caso de *Tesorero* v. *Tribl. de Contrib. y B. Suárez, Inc.*, 74 D.P.R. 274. En dicho caso, donde la controversia se limitó a determinar la constitucionalidad de la aplicación retroactiva de la Ley núm. 30 de 30 de marzo de 1950, enmendatoria de la Ley núm. 61 de 5 de mayo de 1945, dijimos:

"En el caso de *P. Lorrillard Co.* v. *Ross*, 209 S.W. 39, la contribuyente despalillaba tabaco en Kentucky y luego enviaba el tabaco así despalillado a fábricas de su propiedad localizadas en otros estados a los fines de convertirlos en cigarrillos, cigarros y tabaco de mascar. Una ley del Estado de Kentucky disponía que estarían exentos de contribuciones sobre la propiedad los productos, en curso de manufactura, de personas, firmas o corporaciones, actualmente dedicadas a la manufactura

y también estaría exenta de contribuciones la materia prima actualmente en poder de los elaboradores en sus fábricas o plantas siempre y cuando que tal materia prima fuese utilizada con propósitos de manufactura. Se resolvió que en vista de que el producto final (cigarrillos o cigarros) no se manufacturaba en Kentucky, o sea, en el sitio donde se solicitaba la exención, el tabaco despalillado no estaba exento bajo la ley ya mencionada. De dicha ley de Kentucky surgía la intención legislativa al efecto de que la exención se otorgase solamente si el producto final se manufacturaba en Kentucky. Tal intención no surge de la Ley 61 de 1945. Lo que se requiere es que la materia prima se utilice como ingrediente en la manufactura de otro producto industrial o como accesorio o parte integrante de dicho otro producto industrial. La materia prima estaba exenta mientras se encontrase en poder del productor de la materia prima. No se indica en la ley, ni se infiere de ella, que el producto industrial final fuese manufacturado en Puerto Rico. Si el propósito legislativo hubiese sido exclusivamente el de estimular la fabricación en Puerto Rico de cigarros, cigarrillos u otros productos finales, habría entonces margen para la interpretación adoptada por la Corte Suprema de Kentucky en el caso ya citado. Sin embargo, la intención legislativa pudo muy bien haber sido la de estimular la producción de materia prima en Puerto Rico a los fines de su exportación para ser usada en procesos posteriores de fabricación en otros sitios."

Es innecesario detenernos a discutir si lo transcrito del caso de *Suárez* es o no un *"dictum"*. Es obvio que al hacer tales afirmaciones nos estábamos refiriendo al alcance de la exención concedida por la Ley núm. 61 antes de ser enmendada. Su art. 3 disponía lo siguiente:

"Artículo 3.—La 'materia prima' que pueda garantizarse estar destinada a la producción de artículos terminados, estará exenta del pago de contribuciones sobre la propiedad mientras se encuentre en poder de su productor, importador a Puerto Rico, del productor del artículo terminado, o de algún distribuidor intermediario que la tenga destinada para venta o entrega a un productor de artículos terminados, en cuya fabricación entre esa materia prima."

Conforme a esta disposición la exención del pago de contribuciones se aplicaba (1) cuando la "materia prima" se en-

contrare en poder de su productor, (2) cuando se encontrare en poder del importador a Puerto Rico, (3) cuando se encontrare en poder del productor del artículo terminado, y (4) cuando se encontrare en poder de algún distribuidor intermediario que la tuviera destinada para venta o entrega al productor de artículos terminados. Precisamente fundándonos principalmente en que la "materia prima" estaba exenta del pago de contribuciones sobre la propiedad "mientras se encuentre en poder de su productor" fué que dijimos en el caso de *Suárez* que "la intención legislativa pudo muy bien haber sido la de estimular la producción de materia prima en Puerto Rico a los fines de su exportación para ser usada en procesos posteriores de fabricación en otros sitios." Véase que no hicimos la afirmación categórica de que esa fué la intención legislativa, sino que la señalamos como una posibilidad. De todos modos, el argumento expuesto en el caso de Suárez al señalar esta posibilidad, deja de tener fuerza persuasiva una vez que la Ley núm. 30 de 30 de marzo de 1950 enmienda el art. 3 de la Ley núm. 61. "La 'materia prima'—dispone ahora la ley—que pueda garantizarse estar destinada a la producción de artículos terminados, estará exenta del pago de contribuciones sobre la propiedad *mientras se encuentre en poder del productor del artículo terminado.*" (Bastardillas nuestras.) En esta forma quedó eliminada la exención contributiva sobre la "materia prima" cuando ésta se encontrare en poder de su productor. No hay base pues para afirmar que la intención legislativa al enmendar en 1950 el art. 3 de la Ley núm. 61 pudo haber sido la de estimular la producción de materia prima en Puerto Rico a los fines de su exportación para ser usada en la fabricación de artículos terminados en otros sitios. Esto es así, porque al eliminarse la exención sobre la materia prima, que no se encontrare en poder del productor del artículo terminado, no se puede estar estimulando la producción de materia prima, ya sea en su forma natural, o en forma de subproducto (*byproduct*), o producto parcialmente elaborado o cualquier producto terminado, según se define en la ley.

Según ya hemos visto, de acuerdo con el art. 3 de la Ley núm. 61 según quedó enmendado por la Ley núm. 30 de 1950, para que la "materia prima" definida en el art. 1 de dicha ley, quede protegida por la exención contributiva, es necesario que concurran dos requisitos, a saber: (1) que pueda garantizarse estar destinada a la producción de artículos terminados, y (2) que se encuentre en poder del productor del artículo terminado. ¿Qué propósito perseguía la legislatura al exigir la garantía de que la "materia prima" estuviera destinada a la producción de artículos terminados? No podía ser otro que el de estimular la producción en Puerto Rico de artículos terminados. ¿Qué otro fin práctico podía perseguir nuestra legislatura al concederle exención contributiva a la materia prima en poder del productor del artículo terminado, si el proceso final de fabricación ha de realizarse fuera de Puerto Rico? Es incuestionable que estas leyes sobre exención contributiva están inspiradas en el propósito de fomentar y estimular la industria manufacturera en Puerto Rico y no en cualquier otro país. Al aprobarse en la Cámara de Representantes de Puerto Rico el Proyecto de la Cámara 365, que se convirtió luego en la Ley núm. 30 de 30 de marzo de 1950, el entonces legislador Lcdo. Benjamín Ortiz, al explicar su alcance hizo constar entre otras cosas, lo siguiente: "Las enmiendas que se sugieren a esta Ley van encaminadas a cerrar un poco esta enorme puerta de escape [refiriéndose a la lista de productos que quedarían exentos de contribución sobre la propiedad] pero conservando siempre *la intención legislativa de estimular la industria*." (Bastardillas nuestras.) Y ya hemos visto que si la materia prima en poder del productor del artículo terminado, ha de ser usada *fuera de Puerto Rico* en el *proceso final de elaboración o fabricación* del artículo terminado, la exención contributiva de dicha materia prima, en nada puede estimular la industria manufacturera en Puerto Rico. Puede argüirse que esta Ley núm. 61, según fué enmendada por la núm. 30 de 1950, estimula la industria manufacturera de aquellos

productos parcialmente elaborados o productos terminados que dicha ley define como materia prima en su art. 1. Sin embargo, para nosotros es claro que ésa no ha podido ser la intención legislativa ya que dicha "materia prima" en poder de su productor, si éste no es a su vez productor del artículo terminado no goza de la exención contributiva. Si el propósito de la Legislatura hubiera sido en verdad, el de estimular la producción en Puerto Rico de materia prima, la ley no hubiera limitado la exención a aquellos casos en que la materia prima se encontrare en poder del productor del artículo terminado. Esta restricción es consistente con la exención contributiva concedida a las industrias establecidas o por establecerse en esta Isla, en virtud de la Ley núm. 184, aprobada en 13 de mayo de 1948 ((1) pág. 483). Esta ley exime del pago de contribuciones sobre la propiedad, entre las varias exenciones contributivas que concede, a la materia prima que la industria use en sus operaciones. Es indudable además, según apunta la propia apelante, que tales industrias están dedicadas a la producción de artículos terminados en Puerto Rico. Se ve pues, que lo que la Legislatura ha querido estimular es la producción en Puerto Rico de artículos terminados.

El hecho de que en la Ley 61, según enmendada, no se diga en lenguaje expreso, que el artículo terminado ha de ser fabricado en Puerto Rico, no es óbice para que así lo resolvamos si del contexto de la ley, se desprende que esa fué la intención legislativa. *P. Lorrilard Co.* v. *Ross*, 209 S.W. 39.

Otro argumento en contra de la contención de la apelante es el que de prevalecer una interpretación contraria a la que aquí damos a la Ley núm. 61, ésta sería imposible de administrar. Solamente goza de la exención contributiva aquella materia prima que pueda garantizarse estar destinada a la producción de artículos terminados. La materia prima debe estar en poder del productor del artículo terminado. Una vez esa materia prima es sacada fuera de Puer-

to Rico, el Gobierno del Estado Libre Asociado de Puerto Rico perdería todo dominio sobre ella y podría entonces ocurrir (*a*) que no se usara en la producción de artículos terminados, y (*b*) que fuera usada por un productor de artículos terminados, que no sea aquél en cuyo poder estaba la propiedad cuando se le concedió la exención. En cualquiera de estas formas se evadirían las exigencias del estatuto.

No erró la corte sentenciadora al resolver que la Ley núm. 61, según fué enmendada en 1950, exime del pago de contribuciones sobre la propiedad únicamente a la materia prima que se garantice estar destinada a la producción de artículos terminados en Puerto Rico.

*Las sentencias apeladas serán confirmadas.*

El Juez Asociado Sr. Sifre no intervino.

## RESOLUCIÓN

### EN RECONSIDERACIÓN

San Juan, Puerto Rico, a 29 de julio de 1955

A la anterior moción de reconsideración, no ha lugar. El caso de *Consolidated Cigar Corporation* v. *Secretario de de Hacienda*, resuelto *per curiam* en 10 de mayo de 1954, queda expresamente revocado.

Lo acordó el Tribunal y firma el Sr. Juez Presidente. El Juez Asociado Sr. Sifre, no intervino.

A. C. SNYDER,
*Juez Presidente.*

Certifico:

IGNACIO RIVERA,
*Secretario.*