CONCRETO MIXTO, INC., demandante y recurrente, *v.* SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* R-64-137     *Resuelto:* 11 de marzo de 1965

*Miguel Marcos Contreras,* y *R. Elfrén Bernier,* abogados de la recurrente; *J. B. Fernández Badillo, Procurador General, Carlota Capó* y *Elpidio Arcaya, Procuradores Generales Auxiliares,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Secretario de Hacienda impuso y cobró a la demandante-recurrente contribución sobre materiales de construcción consistentes en piedra, arena y cemento, en poder de la contribuyente al primero de enero de 1962. Solicitó ésta sin éxito, el reintegro de dicha contribución ascendente a $5,191.91, alegando que la contribución fue impuesta sobre materia prima en un negocio de manufactura de concreto pre-mezclado y que dicha materia prima está exenta del pago de contribuciones sobre la propiedad bajo las disposiciones de la Ley Núm. 61 de 5 de mayo de 1945, enmendada por la Ley Núm. 30 de 30 de marzo de 1950. (13 L.P.R.A. secs. 560 y

siguientes.) El Tribunal Superior confirmó la decisión del Secretario de Hacienda.

Las siguientes disposiciones eximen a la materia prima de tributación para la imposición de contribuciones:

13 L.P.R.A.—"§ 560. Materia prima exenta—Definición

A los efectos de las secs. 560 a 563 de este título se entenderá por 'materia prima' no sólo los productos en su forma natural derivados de la agricultura o de las llamadas industrias extractivas, sino cualquier subproducto, cualquier producto parcialmente elaborado, o cualquier producto terminado, siempre y cuando que se utilice, bien como ingrediente o como parte integrante de otro producto industrial, de modo que al realizarse el proceso industrial, dicha 'materia prima' pase totalmente y por completo a formar parte del producto terminado, o se consuma por completo, se extinga totalmente, y deje de existir."

13 L.P.R.A.—"§ 561—Producto terminado, definición de

Se entenderá por 'producto terminado' aquel artículo para el comercio que se obtenga uniendo dos o más materias primas o sometiendo una o más de éstas a procesos industriales, siempre que en uno u otro caso se usen métodos predeterminados, y se aplique mano de obra en forma directa o indirecta."

13 L.P.R.A.—"§ 562.—Exención de contribuciones sobre la propiedad

La 'materia prima' que pueda garantizarse estar destinada a la producción de artículos terminados, estará exenta del pago de contribuciones sobre la propiedad mientras se encuentre en poder del productor del artículo terminado."

■ Las transcritas disposiciones y otras similares (¹) sobre exención contributiva responden a la política pública del Estado Libre Asociado de Puerto Rico de crear nuevas fuentes de trabajo en adición a la agricultura y a la ya existente industria azucarera, e intentar resolver el agudo problema de desempleo mediante una intensa industrialización de la Isla. *Descartes, Tes.* v. *Tribl. Contribuciones,* 78 D.P.R. 90

---

(¹)Véase Sec. 16-B de la Ley de Rentas Internas (13 L.P.R.A. sec. 1070).

(1955); *General Cigar Co.* v. *Sec. Hacienda*, 78 D.P.R. 464 (1955).

Para resolver si la materia prima usada por la recurrente en su negocio está protegida por la exención dentro de los señalados propósitos del poder legislativo, ya que el lenguaje del estatuto se presta a variadas interpretaciones, es necesario conocer antes la operación del negocio de la recurrente.

Conocemos, por un memorándum presentado ante el Tribunal Superior y que consta en los autos originales, que el señor Jorge A. Juncos, Administrador General de la recurrente, explicó dicha operación en la siguiente forma:

"a—La operación consiste en la mezcla, en forma predeterminada, de los ingredientes antes mencionados con agua, y en algunas ocasiones ciertos aditivos, para la venta al público consumidor.

b—Explicó que ellos pesan y mezclan la arena, la piedra, y el cemento cuya mezcla es conducida en un camión especial para la entrega al comprador. Expresó el testigo que en el 60% de los casos los materiales tales como piedra, arena y cemento se envían mezclados, pero secos y el agua se le añade en el sitio de entrega. El agua constituye como un 15%, por peso, del concreto mixto. Al llegar al sitio de entrega el conductor del camión le añade el agua necesaria la cual es también conducida en un tanque que lleva el camión. En ocasiones, para entregas cercanas, el agua se le añade a la mezcla antes de salir el camión de las plantas. En algunas ocasiones, aunque muy raras, venden separadamente arena o piedra a algún cliente.

c—El producto se vende directamente a sus usuarios o consumidores.

d—Añadió el testigo que, a su entender, el 95% de los contratistas compran el concreto ya mezclado de mezcladores especializados.

e—Admitió el testigo de la demandante que el concreto mixto no se puede almacenar.

f—Admitió el Sr. Juncos que el concreto mezclado por los propios consumidores es el mismo producto preparado y servido por la demandante con la excepción que el producto preparado por ellos es uniforme."

Hemos visto que la ley declara exenta del pago de contribuciones sobre la propiedad la "materia prima" que pueda garantizarse estar destinada a la producción de *artículos terminados* mientras se encuentre en poder del productor del artículo terminado. Cualifica para la exención aquella materia prima que se utilice, bien como ingrediente o como parte integrante de otro producto industrial, de modo que al realizarse el proceso industrial, dicha materia prima pase totalmente y por completo a formar parte del producto terminado, o se consuma, por completo, se extinga totalmente, y deje de existir.

■ De suerte que la materia prima exenta es aquella (1) que se utilice como ingrediente o como parte integrante de otro producto industrial, (2) que tal uso se realice mediante un proceso industrial, y (3) que al realizarse el proceso industrial la materia prima pase totalmente y por completo a formar parte del producto terminado, o se consuma por completo, se extinga totalmente y deje de existir.

■ Sabemos también que "producto terminado" es aquel artículo para el comercio que se obtiene bien uniendo dos o más materias primas o sometiendo una o más de éstas a procesos industriales, siempre que en uno y otro caso se usen métodos predeterminados y se aplique mano de obra en forma directa o indirecta.

■ No puede sostenerse que al realizarse su mezcla con agua todos los componentes del cemento pre-mezclado, como la piedra y la arena se consuman por completo, se extingan totalmente y dejen de existir. Por lo tanto la recurrente tendría que amparar su reclamación de exención en el hecho de que dichos componentes, al realizarse un proceso industrial, pasan totalmente y por completo a formar parte de un producto terminado.

Tenemos que convenir con el Tribunal Superior en que lo que vende la recurrente directamente a los consumidores, no es un producto terminado, dentro de la intención de la legis-

latura al conceder la exención. Esto es, no es un artículo para el comercio cuya producción se quiso estimular mediante el incentivo de la exención de contribuciones sobre la propiedad de la materia prima que se utiliza en su producción.

El producto que vende la recurrente a los consumidores, es el mismo que éstos preparan para las construcciones de cemento, consistiendo la diferencia en que el suyo es más uniforme. En el sesenta por ciento de los casos, los ingredientes se envían secos a los consumidores aunque mezclados y es en el momento de la entrega en que se le añade el agua. El producto que resulta es una mezcla de la piedra, la arena y el cemento con agua. Se vierte entonces en las formaletas previamente preparadas con los tejidos de varillas de hierro y otros materiales, donde la mezcla comienza a fraguar hasta que queda construida la pared, piso, techo, etc., de cemento. El llamado método predeterminado usado por la recurrente consiste en pesar la piedra, arena y cemento para ser mezclados con agua. Es difícil convenir con la recurrente en que ella fabrica un producto terminado [2] aun cuando en la in-

---

[2] Convenimos con el siguiente razonamiento del Procurador General:

"Bien conocida es la dificultad que existe para determinar con exactitud jurídica qué constituye o no propia y ciertamente 'manufactura'; o qué fase de un negocio o planta está destinada a producción manufacturera.

Existen—hay que admitirlo—algunos casos en la jurisdicción americana, interpretando conceptos de lenguajes de ciertos estatutos especiales, en los que se ha llegado a la conclusión de que el concreto premezclado constituye un producto manufacturado. Ello ha ocurrido, naturalmente, cuando ha habido la necesidad de interpretar palabras, frases o expresiones que en los estatutos parecían claras. *Commonwealth* v. *McCrady-Rodgers Co.*, 316 Pa. 155, 174 A. 395, 397.

No creemos que en el caso que nos ocupa el concepto de 'industria' o 'manufactura' tenga la connotación que la demandante-recurrente quiere atribuirle a los fines de que se le reconozca su derecho a reclamar exención de contribución sobre la propiedad personal sobre los materiales de construcción o materia prima usados en la preparación del concreto premezclado.

En variadas ocasiones se ha dicho que un artículo 'manufacturado' es aquél que a todos los fines pertinentes resulta totalmente nuevo, con

terpretación del estatuto de exención no se aplique la conocida regla de interpretación restrictiva de esta clase de estatutos, regla ésta que no aplicaríamos si con ello se derrotara el propósito legislativo. *Francis* v. *Tribl. Contribuciones y Tes.*, 74 D.P.R. 19 (1952).

El historial legislativo del proyecto de la Cámara 365 que se convirtió luego en la Ley Núm. 30 de 30 de marzo de 1950, demuestra que la legislatura no tuvo el propósito de establecer la exención reclamada por la recurrente. En *General*

---

nombre, características y usos distintos a los de sus materias primas. *Commonwealth* v. *Dyer Quarry Co.*, 95 At. 797.

En *Kidd* v. *Pearson*, 128 U.S. 1, 20 se dijo:

'Manufacture is transformation—the fashioning of raw materials into a change of form for use.'

También se dijo en *Friday* v. *Hall & Kaul,* 216 U.S. 449, 455:

'Manufacturing in the ordinary acceptance of the term, means the making of articles or commodities that can be transported or sold at some other place than that where they are made.'

Pero ¿quién podría válidamente negar que la dinámica final del concreto premezclado como producto terminado sólo se alcanza cuando la mezcla logra su punto de fragüe? ¿No son acaso indispensables para lograr su condición de producto o subproducto, el uso de los moldes, las varillas de hierro, y el necesario transcurso de determinado período de tiempo? ¿En qué etapa precisa puede lógicamente afirmarse que el producto ha llegado a su etapa de subproducto o producto terminado?

El procesamiento de concreto premezclado requiere que se lleve al punto de endurecimiento—cosa que no puede lograrse sin el uso de moldes, varillas, clavos, etc.—para que pueda propiamente considerarse un subproducto o producto parcial o definitivamente terminado o elaborado. De ahí que sea totalmente imposible su almacenamiento, tan indispensablemente necesario para catalogarse como subproducto o producto terminado. La mezcla de concreto todo cuanto representa, a nuestro juicio, es una fase o etapa de labor, como lo son los otros pasos de preparación de molduras, colocación, empotramiento y amarres de varillas, y el acto mismo de echar la mezcla en los moldes para producir en el concreto las características de artículo manufacturado.

Pero independientemente de todo lo dicho, una cosa es que el concreto premezclado constituya un producto manufacturado totalmente diferente a la materia prima para su elaboración utilizada, y otra cosa es que nuestros cuerpos legislativos hayan tenido la intención de eximir de tributación de propiedad personal, a la piedra, la arena y el cemento, por razón de usarse en la producción de concreto premezclado." (Informe del Procurador General, págs. 3 y 4.)

*Cigar Co.* v. *Sec. Hacienda,* 78 D.P.R. 464 (1955), este Tribunal se expresó así a la página 470:

" ... Al aprobarse en la Cámara de Representantes de Puerto Rico el Proyecto de la Cámara 365, que se convirtió luego en la Ley núm. 30 de 30 de marzo de 1950, el entonces legislador Lcdo. Benjamín Ortiz, al explicar su alcance hizo constar entre otras cosas, lo siguiente: 'Las enmiendas que se sugieren a esta Ley van encaminadas a cerrar un poco esta enorme puerta de escape [refiriéndose a la lista de productos que quedarían exentos de contribución sobre la propiedad] pero conservando siempre *la intención legislativa de estimular la industria.'* "

No erró, pues, el Tribunal Superior al sostener la determinación del Secretario de Hacienda.

*Será confirmada la sentencia objeto de revisión.*